**Paul COBB, William R. Woodall, F.D. Sandford, Gary Burke, Bill Clark, Reggie Pendergrass, Rodney Warman and Jack Bruce, Plaintiffs-Appellants,**

v.

**GEORGIA POWER COMPANY, Defendants-Appellees.**

No. 83–8617.

United States Court of Appeals, Eleventh Circuit.

April 16, 1985.

Joseph C. Nelson III, Scott McLarty, Athens, Ga., for plaintiffs-appellants.

Charles W. Whitney, Atlanta, Ga., for defendants-appellees.

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

Before RONEY and KRAVITCH, Circuit Judges, and ALLGOOD *, District Judge.

RONEY, Circuit Judge:

This 42 U.S.C.A. § 1983 federal civil rights action was brought by members of an anti-tax group against their employer. They allege defendant Georgia Power Company violated their constitutional rights by obtaining a temporary restraining order from the Superior Court of Burke County, Georgia, which prevented them from picketing a nuclear power plant construction site owned and operated by defendant. Plaintiffs wished to picket the site to protest defendant's cooperation with the Internal Revenue Service in an investigation into the filing of false W-4 forms by some of defendant's employees. The district court entered summary judgment for defendant after finding that defendant did not act "under color of law" as required by § 1983. We affirm.

Plaintiffs belong to the Golden Mean Society. Its members believe the existing federal tax structure is unconstitutional and are dedicated to obstructing federal tax law enforcement by various devices, including listing an inordinately large number of dependents on their tax returns. All the plaintiffs were employees of Georgia Power or its construction contractors at the construction site in Burke County, Georgia. Georgia Power is the construction manager.

At the request of the Internal Revenue Service (IRS), Georgia Power and its contractors in the spring of 1982 made space available for interviews with certain employees who were suspected of filing false information on their W-4 forms. Georgia Power also agreed to cooperate with the IRS by reporting employees claiming exemptions in excess of a specified number. It also reduced, at the IRS's direction, the

number of exemptions in certain specified cases, including those of several of the plaintiffs here. Approximately 40 employees were fined $500 each for Internal Revenue Code violations as a result of this investigation.

Plaintiffs planned to respond to Georgia Power's compliance with the IRS directive by demonstrating in front of the union workers' plant entrance on June 9, 1982. After Georgia Power unsuccessfully tried to dissuade plaintiffs from this course of action, the company obtained a temporary restraining order (TRO) in the Superior Court of Burke County after establishing to the court's satisfaction that the planned demonstration would substantially interfere with access to and from the plant, thereby causing delay and substantial unrecoverable losses for Georgia Power. Georgia Power contended that the purpose of the planned demonstration was to coerce it into breaking its agreement to cooperate with the IRS.

The TRO prohibited the demonstrators from picketing or leafleting outside the plant, blocking access to or from the plant, or trespassing on Georgia Power property. On advice of counsel, plaintiffs refused to report to work because of the TRO's "no trespassing" provision. After failing to convince plaintiffs to return to work, the company fired them.

Within a few weeks a consent order was entered in the state litigation between the protestors and the company. It provided that all those fired would be rehired, but without back pay, provided they agreed not to demonstrate within a specified distance of the construction site. Georgia Power agreed to provide the protestors with a list of the names and mailing addresses of all current plant employees.

Georgia Power reneged on this agreement when a group of other employees objected to the disclosure of their names and addresses to the Golden Mean Society members. Instead, Georgia Power sought to amend the consent order. The court eventually vacated the consent order and the TRO on the ground that the passage of time and accompanying publicity concerning the demonstrators' objectives had substantially reduced the danger of any significant work stoppage.

Plaintiffs then filed this § 1983 action claiming damages for violation of the First and Fourteenth Amendments to the United States Constitution. The decision in this case turns on whether Georgia Power Company acted under color of state law when it obtained the TRO from the state court. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

 The statutory "under color of law" requirement is equivalent, although not identical, to the constitutional doctrine of state action. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Where a private party acting either jointly with or through state officials becomes so allied with the state as "to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment," the private party is held to have acted under color of state law. *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2756.

 The law is clear in two respects. First, the activity of a heavily regulated public utility does not amount to state action simply because it is engaged in a Government-regulated business. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (no state action found where all plaintiff proved was that the utility was heavily regulated with a partial monopoly and that it elected to terminate plaintiff's service in a manner allowed by state regulation). In *Fulton v. Hecht*, 545 F.2d 540 (5th Cir.), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977), a greyhound breeder and racer brought a § 1983 action against the partners of a private kennel club for their failure to renew his booking contract. He claimed state action was present because the state heavily regulates the dog racing industry. The Court disagreed, saying "[e]ven though the regulation might be extensive, it cannot, in any *realistic sense,*

make the State a partner in the endeavors of the Kennel Club." *Id.* at 542 (emphasis in original).

■ Second, one who has obtained a state court order or judgment is not engaged in state action merely because it used the state court legal process. In *Dahl v. Akin*, 630 F.2d 277 (5th Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1977, 68 L.Ed.2d 296 (1981), a father brought a § 1983 action against his daughter and her husband alleging that through state court proceedings they had confined him to a mental hospital in order to keep him from remarrying and thus diluting his estate. The court held that it was not enough, where the state in no way compelled Akin's actions, that Akin acted "with knowledge of and pursuant to" Texas statutes. *Id.* at 281.

In *Taylor v. Gilmartin*, 686 F.2d 1346 (10th Cir.1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983), the plaintiff sued religious deprogrammers under § 1983. The court held that use of a state court to obtain appointment of a temporary guardian over plaintiff for religious deprogramming purposes was insufficient for state action as the court allowed itself to be used without fully realizing the results which would follow and the issuing judge was not a co-conspirator.

In *District 28 UMW v. Wellmore Coal Corp.*, 609 F.2d 1083 (4th Cir.1979), a coal company obtained state court TROs against the union to prevent it from illegally picketing its mine site. The court found no state action even if the company acted in bad faith because the union failed to allege that the company invoked a state court remedy known to be unconstitutional or that "the remedy was among those questionable prejudgment remedies used by private creditors." *Id.* at 1087. *See also Louisville Area Inter-Faith Committee v. Nottingham Liquors, Ltd.*, 542 F.2d 652 (6th Cir.1976) (no state action where state court order prohibiting mass picketing was challenged without allegation that TRO was obtained in bad faith with knowledge that an *ex parte* restraining order

would be unconstitutional or with an improper purpose); *Hill v. McClellan*, 490 F.2d 859 (5th Cir.1974) (fact that state did no more than furnish the forum and had no interest in the outcome meant no § 1983 jurisdiction); *Phillips v. I.A.B.S.O.I.W., Local 228*, 556 F.2d 939 (7th Cir.1977) (use of state and federal court systems does not equal state action); *Torres v. First State Bank*, 588 F.2d 1322 (10th Cir.1978) (§ 1983's "color of law" reference was not intended to encompass a case where the only infirmities are the excesses of the court order itself, subject to immediate modification by a court having jurisdiction over the private parties, and subject to the normal process of appeal).

■ Based on these two lines of authority, it would be illogical to hold that a regulated utility engages in state action for § 1983 purposes simply because it obtains a state court judgment. No cases have so held. A careful search of the reported cases on point reveals that a certain "something more" is required: something sufficient to bring the state in as a fully culpable co-perpetrator. If, for instance, there is an allegation of a conspiracy between a state officer and a private party, the jurisdictional state action requirement may be met. *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

The decided cases provide no clear definition of what that "something more" than the use of the state process must be, short of alleged wrongdoing by a state officer.

In *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Court found state action where a state statute permitted a writ of garnishment to be issued by an officer authorized to issue an attachment or a court clerk in pending suits on an affidavit of the plaintiff or his attorney containing only conclusory allegations, prescribing filing of a bond as the only method of dissolving the garnishment, depriving the defendant of the use of his property pending litigation, and making no provision for an early hearing.

In *Dykes v. Hosemann,* 743 F.2d 1488 (11th Cir.1984) (*on pet. for reh'g and reh'g en banc*), this Court found state action where a mother alleged a corrupt conspiracy between her child's grandfather, a state court judge, and her ex-husband in a child custody action.

Plaintiffs rely principally on three cases to support the proposition that state action is involved here. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), *Henry v. First National Bank of Clarksdale,* 595 F.2d 291 (5th Cir.1979) (*Henry II*), and *Gresham Park Community Organization v. Howell,* 652 F.2d 1227 (1981).

In *Jackson,* the Court stated that: [i]t may well be that acts of a heavily regulated utility with at least something of a governmentally protected monopoly will be more readily be found to be 'state' acts than will the acts of an entity lacking these characteristics.

419 U.S. at 350–51, 95 S.Ct. at 453. The court found state action in *Jackson* because the regulated utility was performing a regulated function: terminating electrical service to a non-paying customer. This rationale is vital because *Jackson* also made clear that the nexus between the state and the regulated entity's act must be so close that "the action of the latter may be fairly treated as that of the state itself." 419 U.S. at 351, 95 S.Ct. at 453. The closeness of the nexus there turned on the fact that the utility's action was within the scope of its regulated acts. The "something more" was the performance of an act supervised by a state regulatory agency. Georgia Power's actions here did not involve a regulated aspect of the utility's function.

*Henry II,* involved a Mississippi judgment which could bankrupt the National Association for the Advancement of Colored People. The Court granted a preliminary injunction against the Mississippi judgment's enforceability, pending appeal, to avoid a financial catastrophe involving the nation's largest and oldest civil rights organization. *Henry II* sets forth an apparent dichotomy between the use of judicial process by filing a lawsuit and exercise of state authority in enforcing the judgment. The immediately enforceable state judgment was backed by the full power of the state. 595 F.2d at 299.

*Henry II,* decided in 1979, cannot now be read to suggest that possession of a judicially enforceable judgment alone makes a private party a state actor. The Supreme Court made that clear in 1982 in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). There the Court stressed that a "private party's mere invocation of state legal procedures" does not constitute the "joint participation" or "conspiracy" with state officials needed to meet § 1983's requirement of action under color of law. 457 U.S. at 939 n. 21, 102 S.Ct. at 2755 n. 21. *Lugar*'s finding of state action was expressly limited to the context of an unconstitutional *ex parte* prejudgment attachment. *Id. See also Earnest v. Lowentritt,* 690 F.2d 1198 (5th Cir. 1982).

*Gresham Park,* also decided prior to *Lugar,* might indicate support for plaintiff's position. There, this Court found that a liquor store owner acted under color of state law in obtaining a TRO against an organization that was picketing his newly-opened liquor store. We need not here decide whether the language in *Lugar* effectively modifies the careful state action analysis in *Gresham Park.* That case is factually and legally distinct from the instant controversy. The TRO there was enforceable and presently infringing on the plaintiff's rights at the time of the suit. The liquor store owner joined the state as a party. The state law permitting the TRO was directly attacked as unconstitutional. Neither the state nor any state officer is a party to this lawsuit, and the constitutionality of the Georgia state law has not been challenged. The state court itself has long since vacated the offending judgment. Most importantly, *Gresham Park* affirmed a decision by the district court based on abstention, so that the issue of state action does not control the outcome of this case.

The present case is similar to *International Molders & Allied Workers, Union,*

AFL–CIO v. Buchanan Lumber Birmingham, 459 F.Supp. 950 (N.D.Ala.1978), aff'd, 618 F.2d 782 (5th Cir.1980) (unpublished opinion). There, the union claimed Buchanan Lumber violated § 1983 by obtaining an unconstitutionally broad TRO preventing the union from picketing its plant. No other allegations were made. The Court held that without allegations of conspiracy between the state judge and defendant—the "something more"—the complaint failed to state a cause of action.

In the final analysis, this case presents nothing more than a regulated utility's obtaining a TRO in state court that possibly infringed the plaintiff's rights. Plaintiffs can claim at most only that the state judge applied erroneous law in granting Georgia Power its TRO. The plaintiffs, disagreeing with the superior court's decision, could have sought direct appellate review in the Georgia court system. In this case, the state trial court itself vacated the offending order. There is no fact here to add "something more" to the mere use of the state court by a regulated utility. In view of the decided cases, this alone does not support a decision that the defendants are liable for damages under § 1983. The district court correctly entered a summary judgment for the defendant.

AFFIRMED.