Patrick MAHONEY

v.

NATIONAL ORGANIZATION FOR
WOMEN; Gayle Brooks; and
Laura Minor.

Civ. No. H–86–1552(AHN).

United States District Court,
D. Connecticut.

Dec. 10, 1987.

Joseph Secola, Milford, Conn., for plaintiff.

Anthony Slez, Jr., Slez & O'Grady, Westport, Conn., for defendants.

## RULING ON DEFENDANTS MOTIONS TO DISMISS

NEVAS, District Judge.

This case is before the court on Motions to Dismiss pursuant to Rule 12(b), Fed.R. Civ.P. The cause of action arose when the defendants filed and publicly supported a prior federal civil rights damages lawsuit against the plaintiff and others who had proposed and actively campaigned for passage of a municipal referendum challenging access to abortion. The plaintiff alleges that through the prior suit the defendants attempted to deprive him of his constitutional right of access to the political process. Although the prior lawsuit was dismissed without reaching the merits, the plaintiff now seeks damages for violation of his federal constitutional and statutory civil rights. He also asserts pendent state law claims alleging injury from the defendants' intentionally tortious conduct in bringing the prior lawsuit. For the reasons stated below, defendants' Motions to Dismiss are granted as to all counts.

I.

### Background

A. The Referendum [1]

On August 12, 1985, plaintiff Rev. Patrick Mahoney ("Mahoney") appeared before a meeting of the City Council of Bristol, Connecticut, and proposed that a non-binding opinion poll question [2] regarding abortion be placed on the November city election ballot. Mahoney, a self-described pro-life, anti-abortion activist and a member of The Church of The New Covenant and the Christian Fundamentalist Sect, presented the proposal on behalf of himself and an organization called Celebrate Life. Also appearing was defendant Laura Minor ("Minor"), a local pro-choice spokesperson who testified against Mahoney's proposal. After discussing the proposal and the text of the question, the City Council directed Mahoney and Minor to collaborate on preparing an alternative compromise wording. The resulting joint question submitted to the City Council was: "Should the Supreme Court decision regarding abortion be overturned?" The City Council voted to include the question on the November ballot, and it was certified for that purpose by the Town Clerk.

In the ensuing weeks, both Mahoney and Minor campaigned vigorously and publicly for their positions. Minor helped found,

1. Under the Charter of the City of Bristol, the ballot question appears to have been an *initiative* (Charter, Section 50) rather than a *referendum* (Charter, Section 51). However, in conformance with the pleadings and motions, the court will refer to it as a referendum.

2. The proposed question read:

> As there is great concern over the abortion issue; and given that the unborn child is a human life; therefore, should women with unplanned pregnancies, rather than abortion, be offered our resources, our care, or compassion and our love?

and chaired, a "Citizens Against Referendum I" committee to defeat the question. Also campaigning against the question were defendants Connecticut National Organization for Women, Inc. ("NOW"), and its representative, defendant Gayle Brooks ("Brooks"). During this period, the defendants discussed among themselves the constitutionality of placing such a question on a ballot—that is, of submitting an individual civil right to a political majoritarian process—and the possibility of filing suit to determine that issue.

The question was defeated.

## B. *The Prior Lawsuit*

After the election, on November 25, 1985, Minor brought suit in the United States District Court for the District of Connecticut against Mahoney, Celebrate Life, and the Bristol Town Clerk in her official capacity, for money damages and declaratory and injunctive relief pursuant to 42 U.S.C. Sections 1983 and 1985. Seeking indemnification, Mahoney and Celebrate Life joined the City of Bristol as third party defendants. Through her suit, Minor sought to adjudicate as a case of first impression the constitutionality of the referendum.[3] She solicited, and secured, public support for the suit from Brooks and NOW.

The prior lawsuit was concluded when Judge Blumenfeld entered summary judgment for the defendants, ruling that Minor's claim was not sufficiently particularized because she did not ground her claim on her own wish to have an abortion;[4] her suit was therefore "too generalized, speculative and remote to justify standing." *Minor v. Mahoney*, 682 F.Supp. 162, 167 (D. Conn., 1986) (ruling on pending motions) (Blumenfeld, J.). The court noted further that even if Minor had particularized her claim by seeking to exercise her right to an

abortion, there was insufficient causation to support her claim. "For infringement of Minor's right to an abortion to be fairly traceable to the Bristol referendum, the referendum must have passed in the election, and must have influenced the United States Supreme Court." *Id.* at 6.

Having disposed of the suit on the threshold issue of standing, the court did not consider or rule on the merits of the claims.

## C. *The Present Lawsuit*

On December 22, 1986, Mahoney filed the present suit against Laura Minor, Gayle Brooks, and Connecticut NOW. The essence of his claim[5] is that in conspiring to file the prior lawsuit against him, in actually filing the suit, and in publicly supporting it, the defendants attempted to deprive him of his constitutional right of access to the political process. He alleges that, "because they disagreed with the content of [his] political and religious speech, [the defendants] committed acts of intimidation with the intent of barring [him] and others from approaching a public body to express their political and religious views." (First Amended Complaint, filed Aug. 14, 1987, at 1). In a seven-count amended complaint, he seeks declaratory relief, $10 million in compensatory and punitive damages, and costs.

At oral argument on July 15, 1987, the court granted Brooks' Motion to Dismiss the action as against her, pursuant to Rule 12(b), Fed.R.Civ.P. The discussion below memorializes and expands upon the court's reasoning on that ruling.

On July 16, 1987, Minor and Connecticut NOW moved to dismiss all counts against them, pursuant to Rule 12(b), Fed.R.Civ.P. Oral argument was heard on September 4, 1987.

---

3. In pleading his present action, Mahoney alleges that Minor also sought a settlement which would include a prohibition on all future ballot questions regarding abortion.

4. Although Minor was of childbearing age, she had testified that she neither sought nor intended to seek an abortion.

5. The plaintiff's amended complaint is lengthy, rambling, repetitious and conclusory. In order to cope with the substance of his claim, the court has distilled the pleading to its essential components.

## II.

### The *Bivens* Claim

In his first count, the plaintiff asserts an implied cause of action—a so-called *Bivens* claim—for violation of his first and fourteenth amendment rights. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), established a federal common-law cause of action for damages caused by a federal agent acting "under color of his authority" in violation of a claimant's fourth amendment right. *Id.* at 389, 91 S.Ct. at 2001. A *Bivens* action is a nonstatutory counterpart of a suit brought pursuant to 42 U.S.C. Section 1983, and is aimed at federal rather than state officials. By direct analogy to Section 1983, a *Bivens* action has two principal elements: first, a claimant must show he has been deprived of a right secured by the Constitution and the laws of the United States [6]; second, he must show that in depriving him of that right the defendant acted under color of federal law. *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). For this purpose, the statutory "under color of law" requirement is equivalent to the constitutional doctrine of state action. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929–30, 102 S.Ct. 2744, 2749–50, 73 L.Ed.2d 482 (1982). Thus, where there has been no state action, a *Bivens* claim must fail at the outset.

To prevail against purely private parties, under established state action doctrine, the plaintiff must show that the defendants' actions were commanded or encouraged by the federal government, or that the defendants were so intertwined with the government as to become painted with the color of state action. In this case, Mahoney acknowledges that the three defendants were wholly private actors; he does not claim they were commanded or encouraged by the government. He also recognizes the well-established rule that merely calling upon the judicial process is not generally sufficient to transform a private party into a state actor. *Lugar*, 457 U.S. at 940, 102 S.Ct. at 2755 (no Section 1983 state action where defendants invoked aid of state officials in pursuing state-created attachment process). *See Girard v. 94th Street and Fifth Avenue Corp.*, 530 F.2d 66 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Stevens v. Frick*, 372 F.2d 378 (2d Cir.), *cert. denied*, 387 U.S. 920, 89 S.Ct. 2034, 18 L.Ed.2d 973 (1967) ("merely by holding its courts open to the litigation of complaints ... [a state] does not clothe persons who use its judicial process with the authority of the state"). However, Mahoney asks this court to except the prior lawsuit from that rule by finding that the suit implicated "a certain

---

6. As to the first element, Mahoney asserts that the defendants' actions in bringing and supporting the prior lawsuit "with the intent to ... chill and otherwise deprive [Mahoney of his right] to freely speak, associate and exercise [his] religious belief with respect to ballot questions regarding the issue of abortion, and to deprive [him] of [his] fundamental right of access to the political process, specifically to approach a public body to express [his] political views." Amended Complaint, at para. 40. Although he pleads consequent injury to his person, property, and family, *id.* at paras. 47–49, Mahoney fails to specify the nature and degree of such injury, and indeed makes only the bald allegation that the defendants intended to harm him.

Even if Mahoney had adequately alleged actual injury from a first amendment violation, it is not certain that his claim would be cognizable under *Bivens*. Numerous federal courts have extended the reach of a *Bivens*-type claim to constitutional rights other than the fourth amendment, but the circuits are split as to whether *Bivens* may comprehend an action under the first amendment, and the second circuit has explicitly reserved decision on that issue. *See Holodnak v. Avco Corp.*, 514 F.2d 285, 292 (2d Cir.), *cert. denied*, 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975); *Wahba v. New York University*, 492 F.2d 96, 103–04 (2d Cir.), *cert. denied*, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974). Nor does this court need to reach that question here, as plaintiff's claim fails on *Bivens'* second element.

The plaintiff has in addition erred in invoking the fourteenth amendment as a basis for his *Bivens* claim. Although the second circuit has stated that an "invocation of the Fourteenth Amendment's Due Process Clause as the source of [a] claim for relief [may come] within *Bivens'* sweeping approbation of constitutionally-based causes of action," *Brault v. Town of Milton*, 527 F.2d 730, 734 (2d Cir.1975), such a claim is untenable where the allegation is against federal agents acting under color of *federal* law.

'something more' ... sufficient to bring the state in as a fully culpable co-perpetrator," *Cobb v. Georgia Power Co.*, 757 F.2d 1248, 1251 (11th Cir.1985), and thus wrapped the defendants in the cloak of state action. That "something more," he suggests, is the fact that Minor, with the support of NOW and Brooks, brought the prior lawsuit in bad faith, with an improper purpose, and knowing that the remedy she sought was unconstitutional—that is, she sued Mahoney in order to chill his first amendment rights, fully aware that she lacked standing to maintain her suit.

Mahoney's loosely-constructed reasoning is unpersuasive. *Cobb* ruled that, based upon settled law, "it would be illogical to hold that [even such a creature of the state as] a regulated utility engages in state action for Section 1983 purposes simply because it obtains a state court judgment. No cases have so held." *Id.* at 1251. In musing in dicta that state action might be found if a "certain 'something more' " were present, the *Cobb* court identified only one example of such a "something more": a corrupt conspiracy between a state officer and a private party. Even granting that the "something more" notion could amount to a legal standard, Mahoney's allegations fall far short of establishing any actual cooperation between the defendants and any federal officer associated with the prior lawsuit, let alone a conspiracy.

Mahoney also urges this court to find and apply to *Bivens* actions a good faith extension of the landmark holding in *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) (state action present where private persons used state court process to enforce racially-restrictive covenant

in real property deed). However, subsequent decisions have carefully limited *Shelley* to its facts, resulting in a double-standard of review for state action and only applying *Shelley*'s "less onerous" test to claims of invidious discrimination based on race. Such factors are not at issue in the present case. *See Girard*, 530 F.2d at 69–70. *Shelley* can further be distinguished by the fact that the defendants there sought to have the state court apply the weight of governmental authority to enforce an inherently unlawful private covenant; in contrast, the prior lawsuit here was aimed only to have the court declare the parties' lawful rights under the Constitution.

Finally, since there is no basis for the claim that Minor's institution of the prior lawsuit against Mahoney constituted "state action," there can be no foundation for such an assertion with respect to defendants Brooks and NOW, who merely discussed the prior suit with Minor before it was filed and publicly supported it afterwards. Accordingly, because the plaintiff has not alleged a viable cause of action under *Bivens*, the first count is dismissed as to all defendants, pursuant to Rule 12(b)(6), Fed.R.Civ.P.

## III.

### *The Civil Rights Conspiracy Counts*

The plaintiff in counts two, three and four essentially charges that the defendants conspired among themselves to deprive him "and others similarly situated"[7] of the equal protection of the laws[8] by direct action (42 U.S.C. Section 1985(3)),[9] as well as by obstructing justice (42 U.S.C. Section 1985(2)),[10] and by inducing the Unit-

---

7. The plaintiff does not identify or seek to certify a class of plaintiffs, nor does he specify how such "others" may have been injured through the alleged acts.

8. He lists as among those laws various first amendment rights, fifth amendment due process, fourteenth amendment equal protection, and "all privileges and immunities" under state law, including freedom from abuse of process. As noted in note 6 above, there is no basis for the plaintiff's fourteenth amendment claims because the acts complained of in the plaintiff's suit arise from federal, not state, law.

9. 42 U.S.C. Section 1985(3) in pertinent part applies where persons

   conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ...

10. The portion of 42 U.S.C. Section 1985(2) relied upon by the plaintiff applies where persons

   conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Terri-

ed States District Court in the prior lawsuit and the City of Bristol to those ends (42 U.S.C. Section 1985(3)).[11] He further asserts that the defendants were motivated in doing so by "invidious animus, ill-will and animosity" toward him and others "similarly situated" because of the latter's (1) "pro-life, anti-abortion political affiliation and viewpoint," and (2) religious beliefs and church affiliation. In count five, he charges that the defendant NOW is liable for neglecting to prevent those conspiracies.

Although these multiple sweeping assertions suggest a host of issues, they must be disposed of at the threshold.

■ First, to bring an action under the omnibus civil rights conspiracy law, Section 1985(3), for violation of first amendment rights, the plaintiff must show some proof of state involvement; this is so because the first amendment restrains only official conduct. *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 831–33, 103 S.Ct. 3352, 3357–58, 77 L.Ed.2d 1049, *rehearing denied*, 464 U.S. 875, 104 S.Ct. 211, 78 L.Ed.2d 186 (1983). In the present case, the defendants are purely private parties and no state action is present. *See* Section II above. Consequently, Mahoney's first amendment assertions fail.

■ Second, where the alleged conspiracy aimed at interfering with rights constitutionally protected against private, as well as official, encroachment, a plaintiff may maintain a Section 1985(3) claim even absent state action. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). "Read literally, the statute has nearly unlimited application to private conspiracies designed to deprive persons of the equal protection of the law. To avoid construing the statute as a general federal tort law ... the Court limited the Act's application by requiring as an element of the cause of action 'some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Silkwood v. Kerr–McGee Corp.*, 637 F.2d 743, 748 (10th Cir.1980), *cert. denied*, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981) (quoting *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798). Although *Griffin* clearly limited its holding to racial classifications, it left the door open for future expansion of the concept of class-based animus under Section 1985(3).[12] However, courts have been conservative about doing so. To be cognizable, such a

---

tory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; ...

*See* Amended Complaint, at para. 52.

**11.** 42 U.S.C. Section 1985(3) in pertinent part further applies where persons

conspire ... for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ...

**12.** The definition of class-based animus has taken on an ever-expanding life of its own. Courts have developed widely divergent standards requiring plaintiffs to demonstrate that they belong to a clearly defined group, that they be a member of a traditionally disadvantaged group, that they show that the group was not created only for the purpose of litigation, that the group they belong to requires some form of federal protection by legislation, that their group possesses immutable characteristics, or that their group is a "sus-

pect class" or group entitled at least to "heightened scrutiny" under the equal protection clause. These standards ... are often inconsistent and ... place the federal courts in direct conflict with one another....

McDonald, *Starting from Scratch: A Revisionist View of 42 U.S.C. Section 1985(3) and Class-Based Animus*, 19 Conn.L.Rev. 471, 498–99 (1987) (footnotes omitted).

One example of the conservatism and confusion on this matter is the second circuit's split decision holding that Congress' intent in enacting the forerunner of Section 1985(3) encompassed prohibition of political discrimination in general. *Keating v. Carey*, 706 F.2d 377, 387 (2d Cir.1983) (plaintiff experienced class-based discriminatory animus because he was Republican). However, that opinion contained a strong dissent by Judge Meskill, and was subsequently narrowly construed to its facts. *Yale Auto Parts, Inc. v. Johnson*, 593 F.Supp. 329, 334 (D.Conn.1984), *affirmed*, 758 F.2d 54 (1985) (no cause of action where no intimation that political affiliation motivated denial of zoning application). Moreover, it was expressly disavowed by the Fourth Circuit in light of *Scott*. *Harrison v. KVAT Food Management, Inc.*, 766 F.2d 155, 163 (4th Cir.1985).

class must at least be a class *qua* class, and the defendants' actions toward it must evince a "general prejudice which transcends the immediate dispute." *Silkwood*, 637 F.2d at 748.

■ In his present suit, the plaintiff asserts he belongs to two "classes": the membership of a named fundamentalist Christian church and sect, and those who hold pro-life, anti-abortion viewpoints. While it is true that the second circuit has cautiously expanded the class-based animus requirement to include discrimination based on religious affiliation, it has done so where "a bona fide religion has been accepted by several courts for various purposes." *Colombrito v. Kelly*, 764 F.2d 122, 130 (2d Cir.1985). The plaintiff must allege that his religious affiliation is properly cognizable under Section 1985(3), and he has failed to do so. Furthermore, in asserting a "class" consisting of those who oppose abortion, Mahoney has failed to define its contours. At best, it refers to an unidentifiable number of otherwise unassociated persons who hold a certain viewpoint on one specific issue; it is clearly not a political class. It therefore cannot be the basis for the animus required here. Moreover, Mahoney does not substantiate his allegation that the defendants were motivated in suing him because of his religious affiliation or views on abortion. On this point it is worth noting that the prior suit was also lodged against the Bristol Town Clerk, who apparently fell into neither category. Indeed, none of the plaintiff's allegations contradict the reasonable presumption that the defendants filed their suit only for the stated purpose of adjudicating as a case of first impression the propriety of putting the abortion issue to a public referendum. Under such circumstances, the plaintiff does not state a cause of action under Section 1985(3) and his counts three and four must fail.

■ Third, the prior lawsuit does not give rise to a claim of obstruction of justice under Section 1985(2). The portion of Section 1985(2) relied on by the plaintiff creates a cause of action for certain forms of interference with state judicial proceedings. *Kimble v. McDuffy, Inc.*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981) (White, J., dissenting). Having no specific allegations from the plaintiff on this point, the court cannot fathom how this statute can generate a cause of action in this case. The defendants did not interfere with any judicial proceeding, they merely instigated one. In addition, the only judicial proceeding at issue was federal, not state. Furthermore, the second circuit has ruled that a claim under this part of Section 1985(2) requires a showing of class-based discrimination, *Zemsky v. The City of New York*, 821 F.2d 148, 151 (2d Cir.1987), which clearly does not exist in this case.[13] Mahoney's claim under Section 1985(2) must therefore also be dismissed as insufficient.

■ Finally, in Mahoney's fifth count he charges that NOW neglected to prevent the aforementioned acts and conspiracies, in violation of 42 U.S.C. Section 1986. This claim, too, fails because where a plaintiff has no cause of action under Section 1985, he can sustain no claim for neglect to prevent under Section 1986. *Lieberman v. Gant*, 474 F.Supp. 848, 875 (D.Conn.), *affirmed*, 630 F.2d 60 (1979).

■ The court is well aware that motions to dismiss under Rule 12(b)(6) are disfavored in civil rights litigation "where the law is in a continuing state of flux and where the facts in issue are often quite complex." *Granville v. Hunt*, 411 F.2d 9, 11 (5th Cir.1969). However, the court of appeals in this circuit has "repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977) (*which see* for additional authority). "Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Id.*

---

**13.** The question of whether an action under Section 1985(2) must allege a racial or class-based animus has severely divided the courts, and the Supreme Court has so far declined to address it. *Kimble v. McDuffy*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981) (White, J., dissenting).

The present case involves just such a complaint. It is evident that the plaintiff was deeply offended by having been implicated in the prior lawsuit. But it cannot avail him to convert that displeasure into a sweeping civil rights complaint containing 109 often duplicative paragraphs making highly-generalized allegations charging multiple violations of constitutional rights (including some that are inapposite) and claiming $10 million in damages for unspecified injuries. It is well established that where civil rights allegations are conclusory, amounting to "bare-bones inferences . . . totally without any fleshing," they constitute no cause of action. *Granville*, 411 F.2d at 11.

There are good reasons for this policy of restraint. It is too easy to frame civil rights complaints that are not tightly crafted. For instance, "there are no bounds upon the ingenuity of counsel in pleading novel and diverse classes to fit every conceivable situation." *Silkwood v. Kerr-McGee Corp.*, 460 F.Supp. 399, 407 (W.D. Okla.1978), *affirmed*, 637 F.2d 743 (10th Cir.1980), *cert. denied*, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981). One consequence is the temptation to file a so-called civil rights complaint to vindicated injuries better addressed through other means. The courts are adamant that "a civil rights complaint should not be used as a harassing tactic." *Granville*, 411 F.2d at 11.

This court has studied the plaintiff's complaint with great care, construing the allegations in his favor as is required in passing on a Rule 12(b)(6) motion. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *Dahlberg v. Becker*, 748 F.2d 85, 88 (1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). Even accepting Mahoney's allegations as true, his complaint fails to state a cause of action under *Bivens* and civil rights conspiracy law.

## IV.

### Pendent State Claims

■ Defendants also seek dismissal of the plaintiff's pendent state law tort claims of vexatious suit and abuse of process (count six) and intentional infliction of emotional distress (count seven). Pendent jurisdiction is a doctrine of judicial discretion, not of plaintiff's right; it may be exercised where, as here, the claims asserted under state law share a "common nucleus of operative fact" with substantial federal claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 126, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, the Court in *Gibbs* stated flatly that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*, 383 U.S. at 726, 86 S.Ct. at 1139. Courts have with rare exception adhered to that rule. *See Crane Co. v. American Standard, Inc.*, 603 F.2d 244, 245 (2d Cir. 1979) ("pendent state claims must be dismissed if it later is determined that there never existed a federal claim sufficient to invoke the jurisdiction of the federal court."); *Abrams v. Carrier Corp.*, 434 F.2d 1234 (2d Cir.1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); *Rogers v. Valentine*, 426 F.2d 1361 (2d Cir.1970) (no abuse of discretion to refuse to exercise pendent jurisdiction after dismissal of federal claim).

As the plaintiff has no viable federal claims on which to hang his state law allegations, and as this court finds no overwhelming considerations to justify exercising its discretion to retain jurisdiction over counts six and seven, they are dismissed pursuant to Rule 12(b)(1), Fed.R.Civ.P.

### Conclusion

For all the foregoing reasons, the plaintiff's complaint is dismissed as to all defendants.