**DUNWOODY HOMEOWNERS ASSOCIATION, INC., et al., Plaintiffs–Appellants,**

v.

**DeKALB COUNTY, GEORGIA, et al., Defendants–Appellees.**

No. 88–8814.

United States Court of Appeals, Eleventh Circuit.

Oct. 13, 1989.

George E. Butler, II, Atlanta, Ga., for plaintiffs-appellants.

Mark Cohen, State Law Dept., Atlanta, Ga., Joan F. Roach, Albert Sidney Johnson, DeKalb County Attorney's Office, Decatur, Ga., John J. Dalton, Elizabeth Finn–Johnson, Troutman, Sanders, Lockerman & Ashmore, Richard M. Kirby, Hansell & Post, John G. Parker, Paul, Hastings, Janofsky & Walker, Atlanta, Ga., for defendants-appellees.

Before HILL and COX, Circuit Judges, and SNEED *, Senior Circuit Judge.

* Honorable Joseph T. Sneed, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

The Dunwoody Homeowners Association (DHA) and several individual homeowners appeal the dismissal of their § 1983 complaint for failure to state a claim. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

This appeal is the culmination of a rather complicated series of events involving a land use dispute. In 1987, Paragon Group, Inc. (Paragon) filed a request for a zoning change with the DeKalb County Board of Commissioners (Board). The Board granted Paragon's request.

DHA and several individual homeowners (hereinafter collectively referred to as DHA) opposed to the zoning change filed suit in Georgia state court against certain county officials alleging that the Board failed to follow certain procedures required by Georgia law. Plaintiffs determined that Paragon would have to be joined in the action as an indispensable party under O.C.G.A. § 9-11-19. *See Riverhill Community Ass'n v. Cobb County Bd. of Comm'rs,* 236 Ga. 856, 858, 226 S.E.2d 54, 56 (1976).

In September 1987, Hansell & Post, counsel for Paragon, notified plaintiffs of their intention to file what under Georgia law is designated a *Yost* claim.[1] Plaintiffs then amended their complaint to add Paragon. As promised, Paragon, through its counsel at Hansell & Post, counterclaimed under *Yost,* alleging damages of $6 million.[2] Plaintiffs counsel attempted to have Paragon dismiss the counterclaim but Paragon refused. Faced with potential liability of this magnitude, several members of DHA became reluctant to pursue the action. Plaintiffs, confronted with the necessity of defending against the *Yost* claim, dismissed Paragon from its suit. Next, in October, DeKalb County and the individual defendants moved to dismiss the plaintiffs complaint for failure to join an indispensable party, *i.e.,* Paragon. Plaintiffs represent that in opposing the County's motion to dismiss, they made clear to the district judge, Judge Shulman (who is also a defendant in this action), that the threat of the *Yost* claim explained their reluctance to join Paragon.

On November 2, 1987, Judge Shulman, unmoved by plaintiffs' explanation, ordered the plaintiffs to join Paragon or he would dismiss the action. Plaintiffs again amended their complaint, joining Paragon but not seeking any relief against it. Plaintiffs appear to have hoped that by not seeking any relief against Paragon, Paragon could not claim that any damages would result from the suit. Paragon answered and, despite the absence of any prayer for relief against them, refiled their *Yost* counterclaim.

On January 6, 1988, plaintiffs, now innocent of any claim of relief against Paragon, filed a motion to dismiss Paragon's counterclaim, not on state law grounds, but on the grounds that their First and Fourteenth Amendment rights to petition were infringed by the counterclaim and the attendant threat of multi-million dollar damages. In addition, plaintiffs requested that the hearing on their motion to dismiss be heard at the same time as the County's motion to dismiss on the ground of a fail-

---

1. In *Yost v. Torok,* 256 Ga. 92, 95, 344 S.E.2d 414, 417 (1986), the Georgia Supreme Court merged the common law torts of malicious abuse of process and malicious use of process into a new tort. The court defined this claim as follows:

    Any party who shall assert a claim, defense, or other position with respect to which there exists such a complete absence of any justiciable issue of law or fact that it reasonably could not be believed that a court would accept the asserted claim, defense, or other position; or any party who shall bring or defend an action, or any part thereof, that lacks substantial justification, or is interposed for delay or harassment; or any party who unnecessarily expands the proceeding by other improper conduct ... shall be liable in tort to an opposing party who suffers damages thereby.

    *Id.* at 96, 344 S.E.2d at 417. The court further held that under O.C.G.A. § 9-11-13, a *Yost* claim is a compulsory counterclaim and as such must be joined in the original suit or lost. *See* 256 Ga. at 96, 344 S.E.2d at 417-18.

2. Apparently, the $6 million figure represented the amount of financing Paragon stood to lose if the real estate development deal was not consummated by January 15, 1988.

ure to join an indispensable party. This request for a hearing on both issues was granted and the hearing was held on January 12. On January 14, the court informed the parties that it would deny *both* motions to dismiss. Presumably the court believed there was a proper joinder and that no constitutional issue was before it. The plaintiffs, fearing the potential liability of the pending *Yost* claim, voluntarily dismissed their state complaint on January 15, 1988. Because the plaintiffs dismissed this suit, Judge Shulman never issued a written order memorializing his January 14 rulings.

Plaintiffs then brought this action in federal district court against all of the defendants in the state action as well as Hansell & Post, Paragon's attorneys, the state district judge, Judge Shulman, and Albert Johnson, the DeKalb County Attorney representing the defendants in the state action. The plaintiffs returned to their constitutional argument and alleged that the threat of a *Yost* counterclaim in the state action violated their First and Fourteenth Amendment right to petition in violation of 42 U.S.C. § 1983 (1982). In essence, plaintiffs filed the federal action in an effort to test the constitutionality of the use of *Yost* counterclaims in land use cases without incurring the risk of an adverse judgment in state court. The district court dismissed the plaintiffs' complaint for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). Plaintiffs appealed. We affirm.

## II.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343 (1982). We have jurisdiction under § 1291.

## III.

## STANDARD OF REVIEW

This court cannot uphold a district court's dismissal under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S.

41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Burch v. Apalachee Community Mental Health Servs., Inc.,* 840 F.2d 797, 798 (11th Cir.1988) (en banc), *cert. granted,* —— U.S. ——, 109 S.Ct. 1337, 103 L.Ed.2d 807 (1989).

## IV.

## STATE ACTION

The elements of a § 1983 action, albeit familiar to most, bear repeating here. The statute provides:

> Every person who, under color of any statute ... [or] regulation ... of any State ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983 (1982). The source of this provision is the 1871 Enforcement Act, 17 Stat. 13, chap. 22 (codified as amended 42 U.S.C. § 1983 (1982)).

The crucial issue in this case is whether the necessary element of "state action," action "under the color" of state law, is present. The Supreme Court most recently discussed this component of a § 1983 action in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). There the Court said that "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Id.* at 937, 102 S.Ct. at 2753. It then articulated a two-part test to determine whether the "fair attribution" requirement was met.

> First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Id.*

The district court found no state action. It ruled that the plaintiffs failed to satisfy the first prong of the *Lugar* test because, having not sought any relief against Para-

gon and having dismissed their state complaint, they could not argue that the Georgia procedures were unconstitutional as applied to them, but rather could only argue that the Georgia procedures were facially unconstitutional. That is, they could only assert a *jus tertii*. This they have not done.

Further, the district court ruled that the second prong of *Lugar* was not satisfied because there can be no deprivation by a state actor within the context of this case in the absence of an immediately enforceable state judgment.

Without suggesting any infirmity in the district court's decision as it pertains to whether the plaintiffs have satisfied the first part of *Lugar*'s fair attribution test, our only holding is that the plaintiffs have failed to satisfy the second prong. To reiterate, plaintiffs must prove that the deprivation of their First and Fourteenth Amendment rights was caused by a "person who may fairly be said to be a state actor." *Id.*

Neither the parties nor the district court have distinguished between the defendants in this case as it pertains to the state action requirement. For the purposes of our analysis, we will divide the defendants into two categories: the private defendants and the county defendants. The private defendants are Paragon, Hansell & Post, and Judge Shulman; the county defendants include DeKalb county, the individual county commissioners, and County Attorney Johnson.

### A. The County Defendants

■ The county defendants, while clearly agents of the state, have taken no action that deprived plaintiffs of any constitutionally protected interest. Paragon, through Hansell & Post, filed the *Yost* counterclaim. The county defendants are not chargeable with Paragon's actions. As this court has observed:

[the] mere approval of, or acquiescence in, the initiatives of a private party is not sufficient to establish state action: "a State normally can be held responsible for a private decision only when it exercised coercive power, or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."

*Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1357 (11th Cir.1986) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785–2786, 73 L.Ed.2d 534 (1982)). Plaintiffs have not made any allegations that the county defendants coerced or even encouraged Paragon to file the *Yost* counterclaim. Further, by moving to dismiss the plaintiffs complaint for failure to join an indispensable party, pursuant to Official Code of Georgia Annotated, the county defendants deprived the plaintiffs of no constitutional rights. Those rights, if threatened at all, were threatened by the *Yost* counterclaim, not by the joinder of Paragon as an indispensable party. Without doubt the plaintiffs have failed to state a cause of action against the county defendants.

### B. The Private Defendants

#### 1. Immediately Enforceable State Judgment

■ Plaintiffs fare no better in their claims against the private defendants. In cases in which the plaintiff is alleging a deprivation of his constitutional rights through the use of the state's judicial processes by private litigants, this court has held that no constitutional deprivation can be ascribed to the parties or the state judge [3] unless the litigation has "resulted in a state court judgment that was subject to immediate enforcement." *Paisey v. Vitale*, 807 F.2d 889, 893 (11th Cir.1986).[4] This requirement is consistent with *Lugar*, in which the Court made clear that the state action requirement is not satisfied by " 'a private party's mere invocation of state legal procedures....' " 457 U.S. at 939 n.

---

3. We do not address Judge Shulman's claim that he is immune from suit.

4. We also reiterate the *Paisey* court's caveat that an immediately enforceable judgment, by itself, is insufficient to create the necessary state action. *See* 807 F.2d at 895 n. 7.

21, 102 S.Ct. at 2755 n. 21 (quoting *id.* at 951, 102 S.Ct. at 2761 (Powell, J., dissenting)).

To avoid the clear language of *Paisey,* plaintiffs argue that "Paragon's counterclaim *was* the functional and juristic equivalent for state action purposes of an 'immediately enforcible' [sic] judgment...." Appellants' Brief at 34. Their argument demonstrates a misunderstanding of § 1983's state action requirement. The state action requirement is a key element in an action pursuant to § 1983. "Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Lugar,* 457 U.S. at 937, 102 S.Ct. at 2754. What the statute seeks to prevent is the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law...." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). Judge Shulman's preliminary ruling, refusing to dismiss Paragon's *Yost* counterclaim, did not "clothe" Paragon with the state's authority. Judge Shulman more resembled a state actor than did Paragon.

Plaintiffs rely on *Gresham Park Community Org. v. Howell,* 652 F.2d 1227 (5th Cir.1981) and *Cate v. Oldham,* 707 F.2d 1176 (11th Cir.1983), to argue for a different result. We are not convinced. In *Gresham Park,* the Gresham Park Community Organization and three of its officers brought a § 1983 action in an effort to enjoin the enforcement of a state injunction obtained by a private party prohibiting them from picketing a liquor store. 652 F.2d at 1230. In August 1979, a Georgia superior court judge issued a temporary restraining order prohibiting the organization and its members from picketing the store. The state judge denied Gresham Park's request to dissolve the injunction immediately and set another hearing date. Gresham Park appealed the injunction to the Georgia Court of Appeals, which denied a petition for review apparently on jurisdictional grounds. Gresham Park had failed to appeal to the proper court, the Georgia

Supreme Court. Before the state court ruled on the liquor store's request for permanent injunctive relief, Gresham Park "crossed the street" and filed a § 1983 action in federal district court. The federal district judge abstained and Gresham Park appealed. *Id.* at 1231.

This court, although thereafter affirming the district court's decision to abstain, first addressed the issue of whether it had jurisdiction over the case. This court held that the district court's jurisdiction depended on whether the plaintiffs had stated a cause of action under § 1983. *Id.* at 1236-37. In addressing the question whether the plaintiffs' allegations satisfied the state action requirement, we held that issuance of a preliminary injunction by a state court met the immediately enforceable judgment requirement. *Id.* at 1239.

This holding does not support the plaintiffs' argument. First, with regard to the immediately enforceable requirement, nothing in *Gresham Park* was said that undercuts the requirement of a final decision by a state court. Here the state judge had only orally indicated his intent to rule on a motion to dismiss. A final ruling was never made because the plaintiffs dismissed the suit. They neither wanted to join Paragon nor to dismiss their complaint against the defendants, including Paragon; but, faced with the prospect of dismissal by the court, they voluntarily dismissed the state action. In essence, plaintiffs seek to test the constitutionality of state action that never occurred. The resemblance between an advisory opinion and the posture of this case imparts strength to our holding. Even if we regard the immediately enforceable judgement rule as undesireable in certain situations, we do not regard it as such here. *Cf. Gresham Park,* 652 F.2d at 1239 n. 32 ("[W]e need not decide whether we are bound to require immediate enforceability. We note that requiring an 'immediately enforceable' judgment seems undesirable.")

Finally, we also note that *Gresham Park* was decided before *Lugar* and therefore its analysis may have been supplanted. *See Cobb v. Georgia Power Co.,* 757 F.2d 1248,

1252 (11th Cir.1985); *see also Howard Gault Co. v. Texas Rural Legal Aid, Inc.,* 615 F.Supp. 916, 931 (N.D.Tex.1985) (questioning *Gresham Park*'s continuing vitality), *aff'd in part and rev'd in part on other grounds,* 848 F.2d 544 (5th Cir.1988).

Plaintiffs reliance on *Cate* fares no better. *Cate,* again, was a preliminary injunction case. Oldham, the Florida Attorney General, filed a malicious prosecution action against Cate, a lawyer, and the law firm of which he was a member, based on Cate's maintenance of a wrongful death action against the state. Cate moved to dismiss the state action on First Amendment grounds but the state court denied the motion. Cate then sought interlocutory appellate review before the Florida Court of Appeal and simultaneously filed a § 1983 action in federal district court. Cate asked the federal district court to enjoin the state proceedings. The district court denied the injunction and Cate appealed. 707 F.2d 1179–80. This court reversed the district court and granted injunctive relief. *Id.* at 1180.

*Cate* provides little support for the plaintiffs in this case. The crucial issue before this court in *Cate* was whether the plaintiff was entitled to injunctive relief. This court granted the relief. The state had acted by bringing a malicious prosecution proceeding and Oldham, the Florida Attorney General, who brought the action on behalf of himself and the State of Florida, clearly qualified as a state actor. The Supreme Court in *Lugar* made clear that the state action analysis is simplified "when the claim of constitutional deprivation is directed against a party whose official character is such as to add the weight of the State to his decisions." 457 U.S. at 937, 102 S.Ct. at 2754. Here, plaintiffs direct their claims against private litigants and a state judge whose conduct in hearing suits does not satisfy § 1983's state action requirement. *See Paisey v. Vitale,* 807 F.2d at 893.

In sum, the state of Georgia has done nothing more than supply a forum for the resolution of this private litigation. *See Cobb,* 757 F.2d at 1251. It has not engaged in a practice designed to impair First Amendment rights as it did in *Cate.* Its indispensable party rule, O.C.G.A. § 9–11–19, is not so designed; nor is its operative effect revealed by the facts of this case the consequence of any such design by any person acting under color of state law. Paragon, an indispensable party, counterclaiming for a sum large enough to discourage plaintiffs' litigation does not supply this deficiency. Plaintiffs have no constitutional right to an immunity from O.C.G.A. § 9–11–19.

Our rationale resembles the ripeness doctrine under Article III. We seek not to intrude upon state litigation until there has been an in fact, or imminently threatened, deprivation actionable under § 1983. *Cf. Lugar,* 457 U.S. at 936–37, 102 S.Ct. at 2753 ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power.... A major consequence is to require courts to respect the limits of their own power.... ). The mere threat that the state courts may ultimately fail to vindicate federal rights is insufficient to warrant such an intrusion until the threat has materialized beyond an initial ruling on a motion to dismiss.

Our analysis is not intended to trivialize the issues posed by countersuits like the one filed in this case. *See generally* Brecher, *The Public Interest and Intimidation Suits: A New Approach,* 28 Santa Clara L.Rev. 105 (1988); Note, *Counterclaim and Countersuit Harassment of Private Environmental Plaintiffs: The Problem, Its Implications, and Proposed Solutions,* 74 Mich.L.Rev. 106 (1975). Rather, we believe the solution to this problem lies beyond the scope of § 1983.

### 2. Lugar's "Something More" Factors

In an effort to avoid the immediately enforceable judgment requirement, plaintiffs cite a host of factors that they argue transform this private litigation into state action. In doing so they rely upon observations by the Supreme Court. *See Lugar,* 457 U.S. at 939, 102 S.Ct. at 2754 ("Action by a private party pursuant to [a] statute, without something more, [is] not sufficient to justify a characterization of that party as a 'state actor.' "). The Court went on to give examples of what might qualify as

"something more." *See id.* The Court specifically stated that its list was not exclusive and that whether the involvement of the state was sufficient to transform private conduct into state action was essentially a fact-bound inquiry that varied from case to case. *See id.*

Plaintiffs seize upon this passage and articulate a number of facts which they contend transforms this private litigation into state action. First, plaintiffs argue that O.C.G.A. § 9–11–19 delegated a "public function" to Paragon and that the state suit was "a species of 'public rights' action." Although plaintiffs' meaning is obscure, we interpret their argument to mean that O.C.G.A. § 9–11–19, as interpreted in *Riverhill, see supra* at 1457, delegated sovereign authority to Paragon. That is, Paragon was the state actor. Plaintiffs cite *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) and *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In *Jackson,* the Court held that Metropolitan Edison Co., a privately owned utility, did not become a state actor by reason of its regulation by Pennsylvania. *See* 419 U.S. at 351, 95 S.Ct. at 453–54. The "nexus" was insufficient. In *West,* on the other hand, the Court held that a physician under contract with North Carolina to provide medical services to prison inmates was a state actor for the purposes of § 1983. *See* 108 S.Ct. at 2252, 2255.

[3] Neither case is apposite to the facts of this case. Georgia has neither expressly nor implicitly delegated any state authority to Paragon. Neither O.C.G.A. § 9–11–19 nor the interpretation of that rule in *Riverhill* alters this conclusion. Requiring that a private party be joined to a suit does not delegate any state authority.

Next, plaintiffs assert that because DeKalb County stood to benefit from Paragon's joinder to the lawsuit, this court should "attribute Paragon's actions to the state." To so argue also would convert the plaintiffs (whose actions were no doubt intended to benefit the state) into state actors and make this a dispute between individuals all acting under color of state law. To so argue erases the markers by which we demarcate the boundaries of § 1983.

For their next attempt, plaintiffs return to *Lugar.* They argue that there was "joint action" in this case between Paragon and DeKalb County that transformed Paragon's conduct into state action. *See* 457 U.S. at 933 & n. 16, 939, 102 S.Ct. at 2752 & n. 16, 2754–55. In stating that joint action by a private litigant and the state was sufficient to satisfy § 1983's state action requirement, the *Lugar* Court relied on cases holding that certain state prejudgment attachment statutes were unconstitutional. *See* 457 U.S. at 939, 102 S.Ct. at 2754–55. The observation was not novel. In those cases, the deprivation of the plaintiffs property was accomplished with the active participation of state officials. *See, e.g., Fuentes v. Shevin,* 407 U.S. 67, 69, 92 S.Ct. 1983, 1988, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 338, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969). Here, neither joint action nor deprivation have occurred. The plaintiffs envision only the possibility of both. We must await an immediately enforceable state court judgment before sanctioning federal court intervention under § 1983 in a case of this sort.

AFFIRMED.