**SIERRA CLUB, a California nonprofit corporation; Oregon Natural Resources Council, an Oregon nonprofit corporation; Charlie Ogle, Plaintiffs–Appellants,**

v.

**UNITED STATES FOREST SERVICE, Defendant–Appellee.**

**SIERRA CLUB, a California nonprofit corporation; Oregon Natural Resources Council, an Oregon nonprofit corporation, Plaintiffs,**

**and**

**Charlie Ogle, Plaintiff–Appellant,**

v.

**UNITED STATES FOREST SERVICE, Defendant–Appellee.**

Nos. 95–35892, 95–36033.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 1996.

Decided Aug. 20, 1996.

timber sale ends for purposes of the Supplemental Appropriations for Disaster Assistance and Rescissions Act (the Act), Pub.L. No. 104–19, 109 Stat. 194 (1995).

This action is a National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321, *et. seq.*, challenge to proposed salvage timber sales in the Warner Creek area of Oregon. After Plaintiffs filed their complaint, Congress passed the Supplemental Appropriations for Disaster Assistance and Rescissions Act, eliminating the need to follow NEPA when developing salvage timber sales. § 2001(b), Pub.L. No. 104–19, 109 Stat. 194. The Act applies to all salvage timber sales "in preparation" on the date of enactment. Id.

The district court held that the portion of the Warner Creek sale which had not yet been advertised was still "in preparation;" therefore the Act applied to the sale and nullified Plaintiffs' NEPA claim. The court held that the Act did not apply to that portion of the sale which had already been advertised and awarded, however. The court nonetheless granted summary judgment in favor of the United States Forest Service (USFS) with regard to the advertised sale on the merits of the NEPA challenge.

We agree that the unadvertised sale is "in preparation," and therefore subject to Section 2001(b) of the Act. We also hold that section 2001(k) of the Act applies to, and renders moot, the sale which had already been advertised and offered. Accordingly, we affirm.

## I. Factual and Procedural Background

In 1991 an arson fire ravaged through the Warner Creek area, burning over 9,000 acres of Northern Spotted Owl Habitat Conservation Area. In response, USFS proposed the Warner Fire Recovery Project (the Project), for the stated purpose of "recovering" the spotted owl habitat. The Project included the proposed sale of approximately nine million board feet of "salvage timber." USFS believed this sale was necessary to create fire

Marianne Dugan, Western Environmental Law Center, Inc., Eugene, Oregon, for plaintiffs-appellants.

Lisa E. Jones, United States Department of Justice, Washington, DC, for defendant-appellee.

Mark C. Rutzick, Portland, OR, for amicus Associated Oregon Loggers Ass'n.

Before: GOODWIN and BRUNETTI, Circuit Judges, and KING, District Judge.*

GOODWIN, Circuit Judge:

This consolidated appeal requires us to determine when "preparation" of a salvage

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

breaks, and to clear out dead or diseased timber which could serve as fuel for a future fire. Plaintiffs challenged the sales in the District Court of Oregon under NEPA.

During the pendency of the litigation, Congress passed the Supplemental Appropriations for Disaster Assistance and Rescissions Act. Pub.L. No. 104–19, 109 Stat. 194. Although primarily an appropriations measure, the Act contains provisions for expediting the award of salvage timber contracts, principally through eliminating the need to comply with environmental and biological requirements. § 2001(b), Pub.L. No. 104–19, 109 Stat. 194. Under these provisions, for a limited time, USFS need no longer comply with NEPA when proposing a salvage timber sale. Instead, a combined environmental and biological report is to be prepared, with the ultimate decision regarding environmental concerns resting in the discretion of the Secretary concerned. § 2001(c), Pub.L. No. 104–19, 109 Stat. 194. These provisions apply to all sales "in preparation" on the date of enactment. § 2001(b), Pub.L. No. 104–19, 109 Stat. 194.

On the date the Act went into effect, the Warner Creek sales were at two different stages. A small portion of the timber had already been advertised and offered, although not released for harvesting. The remainder of the timber had completed the necessary environmental and biological reporting procedures, but had not yet been advertised. USFS argued that the Act applied to this larger share of unadvertised timber because its sale was still "in preparation." Accordingly, USFS moved to dismiss the complaint with regard to this sale on the basis NEPA no longer applied. USFS also moved to dismiss the complaint in regard to the initial sale of timber. This sale was too small, USFS argued, to have the negative environmental impact complained of in the suit.

The district court agreed, and granted summary judgment in USFS' favor on all counts.[1] Plaintiffs appeal, claiming that the unadvertised sale was no longer "in prepara-

tion," and therefore not controlled by the Act; and that the initial sale violated NEPA despite its small size.

## II. The Unadvertised Sale

■ The Act provides in pertinent part:

(1) SALVAGE TIMBER SALES.—Using the expedited procedures provided in subsection (c), the Secretary concerned shall prepare, advertise, offer, and award contracts during the emergency period for salvage timber sales from Federal lands described in subsection (a)(4).... The preparation, advertisement, offering, and awarding of such contracts shall be performed utilizing subsection (c) and *not-withstanding any other provisions of law,* including a law under the authority of which any judicial order may be outstanding on or after the date of the enactment of this Act.

Section 2001(b), Pub.L. No. 104–19, 109 Stat. 194 (emphasis added).

■ In determining whether the Act applies to the sales at issue here, we begin with the plain language of the statute. *In Re Mitchell,* 977 F.2d 1318, 1320 (9th Cir.1992). Only if the language is ambiguous do we consider statutory history or agency interpretations. *Id.*; *Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Congress addressed the application of the Act to pending salvage timber sales in Section 2001(b)(3):

(3) SALES IN PREPARATION.—Any salvage timber sale in preparation on the date of the enactment of this Act shall be subject to the provisions of this section.

Section 2001(b), Pub.L. No. 104–19, 109 Stat. 194.

At the heart of this appeal is the meaning of "in preparation." On its own, the term could include nearly any step necessary for something to occur-in this case the sale of salvage timber. However, Congress gave "preparation" a special and specific meaning for purposes of the Act alone. This special

---

1. While USFS described its motion as one for dismissal, the district court clarified that in fact the motion was one for summary judgment be-

cause the court considered evidence outside the complaint.

meaning can be gleaned through the use of the term "prepare" elsewhere in the statute. *See Boise Cascade v. EPA*, 942 F.2d 1427, 1432 (9th Cir.1991)("We must presume that words used more than once in the same statute have the same meaning.").

■ Throughout the statute Congress uses the term "prepare" to describe the first in a series of sales steps—"prepare, advertise, offer and award." *See* § 2001(b)(1) ("prepare, advertise, offer and award" used twice); § 2001(f)(3) ("prepare, advertise, offer and award" used twice); § 2001(f)(4); § 2001(i). *Cf.* § 2001(c)(5)(A) ("prepare and advertise"); § 2001(c)(5)(B) ("preparation, solicitation, and award"); § 2001(d) ("prepare, offer·and award"). Under the doctrine of *noscitur a sociis*, "a word is known by the company it keeps ... This rule we rely upon to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress' [citation omitted]." *Gustafson v. Alloyd Co., Inc.*, — U.S. —, —, 115 S.Ct. 1061, 1069, 131 L.Ed.2d 1 (1995). The use of "prepare" in the list of timber sale stages makes it clear that Congress intended "preparation" to embody the activity necessary to reach the next stage— advertisement.

Plaintiffs' argument that a gap of time exists between the end of "preparation," and actual advertisement is not convincing. As noted, "preparation" is a broad term which can encompass nearly any act necessary for carrying out a given task. Given the breadth of the term, the most natural interpretation of "preparation" in the present context would cover the entire continuum of activity necessary for the advertising of a salvage timber sale—right up until the moment of actual advertisement. *See United States v. Alvarez–Sanchez*, 511 U.S. 350, —, 114 S.Ct. 1599, 1603, 128 L.Ed.2d 319 (1994) (we construe a term "in accordance with its ordinary or natural meaning"). Accordingly, we hold that Section 2001(b) applies to all salvage timber sales which had not yet been advertised on the date of enactment, including the second, unadvertised sale at issue here.

Because we find that the plain language of the statute provides that "preparation" en-

compasses all activity up until actual advertisement, ·we need not address Plaintiffs' alternative interpretations. *Mitchell,* 977 F.2d at 1320.

■ We do find it necessary, however, to address the nature of the district court's disposition. After determining that Section 2001(b) applied to the unadvertised sale, the district court proceeded to evaluate that sale under the arbitrary and capricious standard of the Act. § 2001(f)(4), Pub.L. No. 104–19, 109 Stat. 194. According to Section 2001(f)(1), however, the sale was not ripe for review under the Act.

Section 2001(f)(1) provides in pertinent part:

A salvage timber sale to be conducted under subsection (b) ... shall be subject to judicial review only in the United States district court for the district in which the affected Federal lands are located. Any challenge to such sale must be filed in such district court within 15 days after the date of advertisement of the challenged sale. The Secretary concerned may not agree to, and a court may not grant, a waiver of the requirements of this paragraph.

2001(f)(1), Pub.L. No. 104–19, 109 Stat. 194. By the plain import of this section, parties must wait until a § 2001(b) salvage sale is advertised prior to challenging it. *Id.* Therefore, the district court should have dismissed the action for want of jurisdiction once it determined that § 2001(b) applied. The question of whether the proposed sale is valid under the Act must wait until the day when the sale is ultimately advertised.

### III. The Initial, Advertised and Offered Sale

Plaintiffs also challenge the release of the first sale, which all parties agree is not covered by Section 2001(b) of the Act because preparation, advertisement and offering occurred prior to the Act's passage. The district court nonetheless released the sale on the basis it did not violate NEPA.

■ We find it unnecessary to reach the NEPA question. Section 2001(b) may not apply to the initial sale, but Section 2001(k)

**614**

of the Act applies and renders the NEPA claim moot. "An action is moot if the court cannot grant any effective relief." *Wilson v. United States Dept. of Interior,* 799 F.2d 591, 592 (9th Cir.1986). Here, no effective relief is available because section 2001(k) mandates the release of the initial sale irrespective of any NEPA violations.

Section 2001(k) provides in relevant part,

(1) AWARD AND RELEASE RE-QUIRED

*Notwithstanding any other provision of law,* within 45 days after the date of the enactment of this Act, the Secretary concerned shall act to award, release, and permit to be completed in fiscal years 1995 and 1996, with no change in originally advertised terms, volumes, and bid prices, all timber sales contracts offered before that date [July 27, 1995] in any unit of the National Forest System or district of the Bureau of Land Management subject to section 318 of Public Law 101–121.

§ 2001(k), Pub.L. No. 104–19, 109 Stat. 194 (emphasis added). We have previously held that Section 2001(k) applies to all timber sales within the geographical reach of section 318. *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825 (1996). There is no dispute that the initially advertised and offered Warner Creek sale is in a geographical region "subject to section 318." Accordingly, notwithstanding NEPA, the initial sale must be released pursuant to section 2001(k).

AFFIRMED.