**ASSOCIATED CONTRACT LOGGERS, INC., et al.**

v.

**UNITED STATES FOREST SERVICE et al.**

**No. 99–CV–1485(JMR/RLE).**

United States District Court,
D. Minnesota.

Feb. 8, 2000.

Stephen B. Young, Winthrop Consulting, Minneapolis, MN, for Associated Contract

Loggers, Inc., Olson Logging, Inc., plaintiffs.

Mary Trippler, U.S. Attorney, Ernest W. Grumbles, III, Bridget A. Sullivan, James Alan Payne, Oppenheimer, Wolff & Donnelly, Minneapolis, MN, Thomas C. Buchele, Environmental Law, Chicago, IL, Charles K. Dayton, Christopher M. McGlincey, Noah D. Hall, Leonard Street and Deinard, PA, Minneapolis, MN, for United States Forest Service, Superior Wilderness Action Network, Forest Guardians, defendants.

## ORDER

ROSENBAUM, District Judge.

Defendants move to dismiss this case, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Oral argument was heard on January 14, 2000.[1] The defendants' motions are granted, and the cause is dismissed with prejudice. Further, because this Court is concerned as to plaintiffs' and their counsel's bona fides in initiating and prosecuting this lawsuit, the Court issues an Order to Show Cause why sanctions ought not be imposed.

### I. *Background*

Plaintiffs are Associated Contract Loggers, Inc., and Olson Logging, Inc. Each claims to be involved in Northern Minnesota logging. Plaintiffs bring this action against the United States Forest Service ("Forest Service" or "USFS") and two private, nonprofit organizations: the Superior Wilderness Action Network ("SWAN") and Forest Guardians (collectively, "nonprofit defendants").

While plaintiffs' complaint is far from crystal clear, it appears to claim defendants, acting in concert, violated the Establishment Clause of the United States Constitution. Specifically, plaintiffs claim the nonprofit defendants have attempted to suborn or coerce the USFS into imposing a set of religious beliefs called "Deep Ecology."

Plaintiffs claim the nonprofit defendants have influenced the Forest Service's decision-making in matters of forest management. In plaintiffs' view, the nonprofit defendants' efforts to influence the USFS have converted them from private parties into state actors for constitutional analytic purposes. Plaintiffs further claim the USFS has acquiesced in the nonprofit defendants' actions. The complaint states, and for purposes of this Rule 12 motion the Court must assume, that the nonprofit defendants' actions are actually motivated by a form of nature worship.

### II. *A Rule 12 Motion*

In considering these motions, the Court is ever mindful of its obligation to assume the facts set forth by plaintiffs as true, and that a complaint "should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nonetheless, granting a motion to dismiss is appropriate when a complaint, even taken as true, and considered in light of applicable law, shows an insuperable bar to relief. *See, e.g., Leggett v. Montgomery Ward & Co.,* 178 F.2d 436 (10th Cir.1949). Throughout this Order, the Court does not determine the accuracy of plaintiffs' factual allegations, but instead focuses solely on the legal import, or lack thereof, of those facts. With that approach in mind, the Court concludes plaintiffs' claims cannot proceed.

### III. *The Nonprofit Defendants*

Taking the plaintiffs' well-pleaded facts as true, the Court easily finds all claims against the nonprofit defendants must be dismissed for two fundamental reasons.

---

1. Defendants moved, pursuant to D.Minn.LR 72.1(b)(1)(B), to deny plaintiffs oral argument as a sanction for plaintiffs' admitted failure to comply with the District of Minnesota's briefing schedules. Such neglect needlessly complicates the work of both opposing counsel and the Court. Notwithstanding this lapse, the Court allowed plaintiffs to participate in oral argument.

First, notwithstanding plaintiffs' assertions, the nonprofit defendants are not, and cannot be under plaintiffs' pleadings, state actors. Second, the nonprofit defendants are immune from this kind of suit under the *Noerr–Pennington* doctrine.[2]

### A. *State Action*

The establishment clause of the United States Constitution prohibits governmental actions which support or establish religious beliefs. *See* United States Constitution Amend. I ("Congress shall make no law respecting an establishment of religion . . . ."); *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir.1997); *see also United Bhd. Of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 831, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

■ Plaintiffs' complaint recognizes that SWAN and Forest Guardians are nonprofit entities, and neither is part of the state or federal government. Nonetheless, plaintiffs claim the nonprofit defendants have so entangled themselves in the Forest Service's affairs that they must be considered state actors for purposes of this lawsuit. Plaintiffs assert, "Defendant USFS has allowed itself to be used as a tool, agent, or instrument of Defendants SWAN and Forest Guardians for religious purposes." Complaint at 7. This somewhat bizarre assertion is neither supported in law nor in the complaint's own factual allegations.

Plaintiffs' brief opposing dismissal misapprehends the concept of state action. Plaintiffs cite cases irrelevant to the issue. For example, plaintiffs cite the well-known case of *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), where the United States Supreme Court found a state court's order enforcing a racially-discriminatory private covenant which restricted real estate sales to be a state action. Plaintiffs do not seem to understand that, however misguided, the private parties' contract was not the state action barred in *Shelley*. The state action was the court's order enforcing the private parties' racially-discriminatory covenants. While *Shelley* is undoubtedly an important case, it says nothing about whether a nonprofit private party, which advocates and petitions a federal agency, becomes a state actor. Neither *Shelley*, nor any case cited by plaintiffs, supports a claim of state action on the part of the nonprofit defendants.

To the contrary, both the Congress and the courts permit private parties, irrespective of their religious views, to participate in the public's discourse over forest and natural resource use. The Congress has explicitly allowed public participation in the administrative process before any major use of federal lands and resources is allowed. *See, e.g.,* National Environmental Policy Act, 42 U.S.C. §§ 4331, 4332. This participation is encouraged in order to give meaning and flesh to the additional First Amendment constitutional protection: the right to petition for redress of grievances. Similarly, the courts have remained open to private parties seeking to protect—however that term is defined—natural resources. *See, e.g., Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998); *Sierra Club v. United States Forest Service*, 93 F.3d 610 (9th Cir.1996).

■ In order for a party's acts to be deemed state action, a court must consider: (1) whether the claimed constitutional violation resulted from the exercise of a right having its source in state authority, and (2) whether the private parties (here, SWAN and Forest Guardians) charged with the deprivation could be described in all fairness as state actors. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). Plaintiffs have entirely failed to plead facts which support either element.[3]

---

**2.** The Court, in a later portion of this Opinion, focusing directly on the United States Forest Service, finds this matter is not currently jus-

ticiable. This same determination is fully applicable to the nonprofit defendants.

**3.** Plaintiffs' memorandum in opposition to

A private party does not become a state actor by the "mere invocation" of legal procedures. Such an act does not satisfy the first element of the test. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 n. 21, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *see also Cobb v. Georgia Power Co.*, 757 F.2d 1248, 1251 (11th Cir.1985). The mere use of legal procedures cannot suffice; there must be an affirmative governmental action encouraging the private action. Simple governmental permission to participate in a consultative process is not sufficient. Here, the laws and administrative practices which deal with forest use allow private-party input; this is no more than the "mere invocation" of procedures which is fully permitted and protected. Plaintiffs' complaint sets forth no factual allegations which could conceivably support any claim that the nonprofit defendants did anything other than invoke statutory rights.

Plaintiffs correctly acknowledge the nonprofit defendants' frequent participation in adversarial proceedings against the USFS. *See* complaint at 10 ("The tactics used be [*sic*] Defendants SWAN and Forest Guardians have placed great administrative burdens on Defendant USFS in Minnesota so that sales of timber are postponed, delayed or abandoned."); *id.* at 9–10 (listing appeals and lawsuits brought by the nonprofit defendants challenging USFS actions). The Court considers that these allegations actually undermine any claim of governmental encouragement. The cited instances are events when, rather than working in concert with the USFS, the nonprofit defendants opposed and burdened the Forest Service. The complaint simply fails to allege any encouragement or endorsement by the government of the nonprofit defendants' activities.[4]

Plaintiffs have similarly failed to allege facts to support their claim that the nonprofit defendants could be described in fairness as state actors. Plaintiffs certainly claim the nonprofit defendants are active administrative process participants and litigants, but they fail to assert any facts to support the conclusion that they are, in fairness, appropriately described as state actors. The nonprofit defendants actively advocated for positions they espouse. They have prevailed and they have lost. *See, e.g.*, complaint at 9–10. This simply makes them participants, not state actors.

Again, the nonprofit defendants' status as litigation opponents of the USFS militates against attributing their actions as state action. *See Polk County v. Dodson*, 454 U.S. 312, 324, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defenders, even though paid by the state, are not state actors due to adversarial function). Plaintiffs do not claim the nonprofit defendants' lawsuits are collusive, or that the USFS and the nonprofit defendants are not genuine adversaries in those other matters. Plaintiffs' complaint, in fact, makes clear that the nonprofit defendants have placed a burden on the USFS, and plaintiffs allege this burden has caused the USFS to scale back logging activities—thus depriving plaintiffs of as much logging as they believe is appropriate. *See* complaint at 9–10. These allegations are inimical to plaintiffs' assertion that the nonprofit defendants' actions are those of the state.

Thus, neither the "state authority" nor the "in all fairness" state actor factors set forth in *Edmonson v. Leesville Concrete*

---

motions to dismiss at 14 suggests that defendants' cited state-action cases were inapplicable in an Establishment Clause context. This suggestion was spurious. *See Capitol Square Review Board v. Pinette*, 515 U.S. 753, 766–67, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) ("By its terms [the Establishment] Clause applies only to the words and acts of *government*.") (emphasis in original).

4. As in Section II, above, the Court clearly recognizes that a Rule 12(b)(6) motion is not the time to resolve factual disputes. But it is a time to determine whether the challenged party has pleaded any facts setting forth a claim on which relief may be granted. Here, the Court is not resolving a factual dispute; indeed, it is taking the plaintiffs' assertions as true. Plaintiffs' problem is that, even taking their complaint as true, they have failed to state a claim on which relief may be granted.

*Co.* have been alleged by plaintiffs in a manner which states a claim upon which relief can be granted, within the contemplation of Rule 12(b)(6). As a result, no colorable claim premised on the Establishment Clause has been pled against the nonprofit defendants. Accordingly, the state action claims against the nonprofit defendants must be dismissed.

### B. *Noerr–Pennington*

Plaintiffs seem to completely misapprehend the Constitution's protection of a citizen's right to petition the government for redress of grievances. This protection inheres whether the petitioner is a single person or a collective group commonly advocating for their views.[5]

In analyzing this portion of plaintiffs' complaint, the Court does assume as true plaintiffs' rather problematic assertion that the nonprofit defendants are actually adherents of the Deep Ecology religion. After making this assumption, however, plaintiffs urge the Court to accept, as an actionable claim, the stunning proposition that the Constitution protects only a religious group's rights to ineffective petition. According to plaintiffs, once the religious group's petition actually seeks to accomplish something—and to press its beliefs into actions—the religious group moves beyond the ambit of the First Amendment's protection of the right to petition.

■ Plaintiffs astound the Court when they assert that the First Amendment does not protect effective petitioning activities, stating—without citation to any authority whatsoever—that "[o]nce defendants *act* on their beliefs—more importantly—once defendants seek to involve the government in enforcing their beliefs,

they cross the line separating valued and protected freedoms from unconstitutional manipulation of the government's police powers." Plaintiffs' memorandum in opposition to motions to dismiss at 3 (emphasis in original).

This assertion is so clearly wrong as to beggar conventional legal analysis. The right to petition is absolutely fundamental to the First Amendment. "To hold ... that people cannot freely inform the government of their wishes would ... be particularly unjustified." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *accord NAACP*, 357 U.S. at 459, 78 S.Ct. 1163. The Constitution itself even makes it more clear: Citizens have the right "to petition the Government for a redress of grievances." It is beyond conception that this cherished right is so cabined that it is lost at the very moment the petition might possibly achieve success.

Even assuming the nonprofit defendants are advocates of a religion's precepts, the Court finds no support for the proposition that the right to petition is restricted to citizens whose motivation is only secular. No such restriction is found in the words of the Constitution. Plaintiffs have cited no authority to support their argument to the contrary, because none exists. Freedom of belief is not a passive right: citizens are not limited to merely sitting idly thinking about their political, moral, and religious beliefs; democracy is founded upon them acting upon those beliefs in efforts to effect change. *See generally Corporation of Presiding Bishop of Church of Jesus Christ of Latter–day Saints v. Amos*, 483 U.S. 327, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987); *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970).[6]

---

**5.** It is irrelevant whether the nonprofit defendants approach the USFS in administrative proceedings or the courts singly or in a group. The Constitution's First Amendment protects the right of individuals to freely associate with others of their choosing. *See, e.g., NAACP v. Alabama*, 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) ("Effective advocacy of both public and private points of

view, particularly controversial ones, is undeniably enhanced by group association ....").

**6.** The motion hearing transcript will reveal at least one stunning moment. This occurred when plaintiffs' counsel suggested that, whenever an arguably religious-based claim is asserted, the Court ought to make a threshold determination and decide whether the claim

Not surprisingly, with these flawed assumptions at their core, plaintiffs' arguments with respect to the *Noerr–Pennington* doctrine fail. The *Noerr–Pennington* doctrine implements the First Amendment's protections by barring claims against litigants "for injuries allegedly caused by activities and participation in public processes with the intent of influencing public policy decisions." *Fischer Sand and Aggregate v. City of Lakeville,* 874 F.Supp. 957, 959 (D.Minn.1994); *see also Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). On its face, this doctrine immunizes the nonprofit defendants from plaintiffs' claims, as the activities complained of are prima facie protected petitioning activity.

There is an exception to the *Noerr–Pennington* doctrine. The doctrine excepts those whose claims were not filed with the true intent of influencing public policy, but whose true intent was a sham. In such a case, claims can be allowed against a party whose legal actions were objectively and subjectively meritless. *See Fischer Sand,* 874 F.Supp. at 959. But plaintiffs' complaint makes no such assertion. Their only reference to this *Noerr–Pennington* exception is found in their responsive brief opposing dismissal.

Plaintiffs' belated assertion of sham by the nonprofit defendants falls far short of the mark. In order to place the nonprofit defendants beyond the *Noerr–Pennington* doctrine, plaintiffs must overcome a high hurdle. They must show that the nonprofit defendants' actions were "objectively meritless in the sense that no reasonable [person] could realistically expect success on the merits"; they must also show that the actions were undertaken in bad faith (the subjective element of the test). *Fischer Sand,* 874 F.Supp. at 960. The plaintiffs have failed to meet this test.

Plaintiffs' complaint shows the futility of their position. Rather than having made "objectively meritless" claims, they acknowledge that on several occasions, the nonpublic defendants' efforts to influence public policy have succeeded. *See, e.g.,* complaint at 9 ("SWAN filed a successful appeal which halted the Greenwood Timber Sale in Superior National Forest in Minnesota."). Plaintiffs do not allege that any of the nonprofit defendants have ever been sanctioned under Fed.R.Civ.P. 11 or otherwise for bringing frivolous actions, or that any of the nonprofit defendants' actions have ever been described by the USFS or the courts as shams. This record of success simply vaporizes plaintiffs' claims that the nonprofit defendants' actions were "objectively meritless," and that "no reasonable [person] could realistically expect success" on them. The nonprofit defendants not only realistically expected success; they at times, achieved it. A successful claim is, as a matter of logic and of law, not meritless. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 58, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).

The plaintiffs, therefore, have not satisfied the objective test which could invoke the sham exception to the *Noerr–Pennington* doctrine. They have, similarly, failed to deny that the nonprofit defendants were attempting to influence governmental actions which could implicate the sham exception's subjective element. Instead, plaintiffs again focus on their allegation that the nonprofit defendants' motivation was religious. This allegation fails to help the plaintiffs, because a religious motivation is not now, and has never been, any bar to *Noerr–Pennington* protection. The Court finds that plaintiffs' claim of a sham exception to the *Noerr–Pennington* doctrine is entirely inapplicable. Plaintiffs' desperate efforts to smear the nonprofit defendants with the sham brush is both unseemly and unavailing.

In short, the Court finds that the Constitution's Establishment Clause does not trump its right to petition and the right to free exercise of religion, including the right to express those beliefs to govern-

is religiously based. If so, he urged the Court

to deny the religious litigant access to relief.

mental officials. As the Court noted at oral argument, many of the parties involved in social and political advocacy in this country have been motivated and inspired, at least in part, by religious views. The concept of a court's prescreening a party's religious views, and requiring them to prove that its claims are not religiously based, is disturbing, and runs counter to the protections set forth by the Constitution. It is a concept which this Court will not endorse.

Accordingly, because plaintiffs have failed to establish state action or any inapplicability of the *Noerr–Pennington* doctrine respecting the nonprofit defendants, their motions to dismiss are granted. Because these flaws in plaintiffs' lawsuit are of constitutional dimension and cannot be corrected by amending the complaint, this dismissal is with prejudice.

## IV. *United States Forest Service*

After review of the plaintiffs' claims, the Court finds, in light of Rule 12(b), that plaintiffs have failed to recognize and acknowledge applicable law respecting the Forest Service. Their claims against the USFS fail because (a) this matter is not justiciable under Article III of the Constitution; (b) plaintiffs have abandoned any claim for breach of statutory duty; and (c) plaintiffs have failed to state a claim under the Establishment Clause.

### A. *Justiciability*

The Constitution, itself, makes clear that a federal court may only exercise its powers when there exists a "case or controversy" within the meaning of Article III. "A justiciable controversy is ... distinguished from a difference or dispute of a hypothetical character; from one that is academic or moot. The controversy must be definite or concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy, admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v.*

*Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). No such dispute exists here.

■ Plaintiffs recite a series of past logging disputes between the USFS and the nonprofit defendants. After invoking this history, they ask the Court to bring its injunctive power to bear on future logging disputes. But plaintiffs do not claim any present logging dispute. The prior actions are complete; all appeals and other legal challenges have either been concluded or waived. Under these circumstances, the Court cannot—and indeed, is constitutionally prohibited from attempting to—speculate or opine concerning future disputes.

Plaintiffs' only response to this objection is a statutory citation to 28 U.S.C. § 1331, and cases based upon it. This "reply" is entirely unavailing. There is no doubt that § 1331 touches subject matter jurisdiction. At the same time, it is axiomatic that a statute cannot trump the Constitution, which is the supreme law of the land. No statute obviates Article III's requirement of a case or controversy. Whether or not the Court can, in fact, discern the beliefs of Deep Ecology, and even if the Court could anticipate future actions (Heavens (or Deep Ecology) knows it couldn't have anticipated this one), this case is simply not ripe. Plaintiffs attempt to reply by making the facile observation that defendants "are all over the [I]nternet and in the public press." Plaintiffs' memorandum in opposition to motions to dismiss at 20. Even assuming this to be true, it in no way creates a case or controversy where none exists.

Plaintiffs' arguments, if they relate at all to justiciability, misapprehend this Court's power: a federal court cannot, and will not, act absent a live and current dispute. None is present here. The Court recognizes that it might be able to hear a case where there is a dispute which is "capable of repetition, yet evading review." *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). But plaintiffs have nowhere alleged that this is

such a dispute. Even absent such an allegation, the Court considers, as dicta, that since each of the Forest Service's actions are particular forest and site specific, this slender exception would likely be unavailable here.

Absent any case or controversy, as is mandated by the Constitution, each claim against these defendants must be dismissed.

### B. *Statutory Claims*

Plaintiffs have disavowed any claims based on the statutes which control the USFS's actions, including the Organic Act of 1897 or the Multiple–Use Sustained Yield Act of 1960. *See* plaintiffs' memorandum in opposition to motions to dismiss at 17. Plaintiffs have apparently taken this position to withdraw their claims entitled "Breach of Duty by Defendant USFS." Complaint at 4–6. In that portion of their complaint, plaintiffs appeared to assert the USFS had acted in breach of numerous duties purportedly imposed by statute. But now, in light of the plaintiffs' late abandonment of any possible statutory claims (and to whatever extent a private cause of action might accrue therefrom—a highly questionable proposition), any possible claim is dismissed.

### C. *Establishment Clause*

· ▮ Finally, the Court determines that plaintiffs have entirely failed to state a claim under the Establishment Clause. The United States Supreme Court has delineated the test to be applied to Establishment Clause claims. Under *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), a court must ask three questions when considering such a claim: (a) Does the government action have a secular legislative purpose? (b) Is the action's primary effect either to advance or inhibit religion?, and (c) Does the action foster excessive government entanglement with religion? *See id.* at 612–13, 91 S.Ct. 2105. As plaintiffs have challenged the Forest Service on Establishment Clause grounds, the *Lemon* test must be applied here.

▮ Plaintiffs' complaint sets forth no facts which demonstrate that the USFS's purpose in regulating forest use was anything other than secular. Their conclusory assertions that the Forest Service's actions were taken to implement or impose the teachings of Deep Ecology—without any factual allegations in support—do not, and could not, permit any finding upon which relief could be granted. Even under the liberal pleading standards of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), plaintiffs' bare assertions lack the substance to satisfy this element.

Further, there is no fact alleged which shows the USFS's forest-use actions primarily advanced or inhibited religion. It is a sophistry to say the nonprofit defendants' religion disfavors logging; the Forest Service sometimes does not allow logging; and therefore, the Forest Service had taken a position advancing religion. This is as illogical as saying that if a tall man advocates a position, and the government takes a position in accord with the tall man's wishes, it therefore follows that the government has necessarily established the views of tall men.

Beyond this wholly insubstantial argument, the Court takes judicial notice of instances where the USFS enthusiastically litigated against the nonprofit defendants—and others alleged by plaintiffs to also advocate Deep Ecology—in forest management decisions, sometimes winning and sometimes losing. The public record, which can be considered in motions to dismiss, *see Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999), is clear that the USFS sometimes takes positions which are congruent with, and sometimes incongruent with, those taken by the nonprofit defendants. Plaintiffs' own complaint recognizes this. *See* complaint at 9–10. A governmental decision coinciding with the desires of a religious group does not automatically constitute the primary advancement of that religion.

Finally, the Court finds no allegation in the complaint to support a claim that the

USFS's actions foster excessive entanglement with religion. The Forest Service acts, as it is required by law to do, as an arbiter of forest management decisions. Even if the nonprofit defendants were religiously motivated, they are simply player-participants in the forest management process.[7] If the Court were to rule that the nonprofit defendants' religion barred them from participating in the USFS's activities, the Court would necessarily become excessively entangled in deciding which religious believers could—and could not—advocate to influence governmental policy.

Because plaintiffs have failed to satisfy any of *Lemon's* requirements, the USFS motion to dismiss must also be granted.[8] Again, because the flaws in plaintiffs' claims are fundamental and irreparable through amendment, this dismissal is also with prejudice.

## V. *Sanctions*

■ A Court possesses inherent power to sanction conduct that is inappropriate and frivolous. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Despite plaintiffs' protestations to the contrary, this lawsuit seems to be designed to harass and delay the defendants, in particular, the nonprofit defendants, in the exercise of their constitutionally-protected rights.[9] It appears probable that Plaintiffs have knowingly drawn this Court into an unseemly and baseless lawsuit, and has wasted the Court's time and the defendants' valuable time and money. It presently appears that this case falls far below the minimal standards of pleading and law which ought to be expected in a federal court practitioner.

With these preliminary observations in mind, but not yet established as findings, the Court invokes its inherent powers and those granted by Fed.R.Civ.P. 11, and issues an Order to Show Cause, directed to plaintiffs' attorney, to show cause to this Court why it ought not to impose sanctions against him for his frivolous and, perhaps, contumacious pleading. This response is returnable within 15 days of the issuance of this Order.

## V. *Conclusion*

Accordingly, IT IS ORDERED that:

1. Defendants' motions to dismiss [Docket Nos. 4, 8, & 10] are granted, and the matter is dismissed with prejudice.

2. The attorney for plaintiffs is ordered to show cause, within fifteen (15) days of this Order, why sanctions should not be imposed, pursuant to this Court's inherent powers, and under Fed.R.Civ.P. 11 for his actions in bringing this lawsuit.

---

7. The Court notes, parenthetically, that the plaintiffs do not allege that they participated in the administrative process in the forest management matters of which they now complain.

8. The USFS has also argued that plaintiffs' failure to plead facts to overcome sovereign immunity dooms their request for damages. Because the Court's rulings herein are dispositive, it does not reach the sovereign immunity question.

9. Such lawsuits have become known as SLAPP suits, where SLAPP stands for "Strategic Lawsuits Against Public Participation." *See Greenwich Citizens Comm. v. Counties of Warren & Washington Industrial Development Agency,* 77 F.3d 26, 29 (2d Cir.1996).