E.O. WILLIAMS, et al., Plaintiffs,

v.

COUNTY OF GREENE, et al., Defendants.

Civ. A. No. 89–0001–C.

United States District Court, W.D. Virginia, Charlottesville Division.

April 4, 1990.

J. Benjamin Dick, Charlottesville, Va., for plaintiffs.

Roger C. Wiley, Charlottesville, Va., and James W. Hopper, Richmond, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

Plaintiffs in this case operated a flea market at the intersections of U.S. Routes 33 and 29 in Ruckersville, Greene County, Virginia. They allege that a tax ordinance passed by the defendant Board of Supervisors (the "Board") and the subsequent enforcement of that ordinance by the defendant sheriff and his deputies (hereafter the "Sheriff") were efforts to drive the plaintiffs out of business in violation of their rights under the Fourteenth Amendment. Plaintiffs bring suit under 42 U.S.C. §§ 1983, 1985(3) and 1986. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). At a prior hearing this court granted the individual supervisors' motions to dismiss on the basis of absolute legislative immunity. Subsequently, both plaintiffs and the Board moved for summary judgment both of which motions were opposed by the Sheriff. At a hearing held on February 14, 1990, the court denied the plaintiffs' motion for summary judgment and took that of the Board under advisement. That motion is now ready for disposition.

The plaintiffs allege that the Board is liable for two distinct sets of wrongs: those arising from the ordinance itself and those arising from the enforcement of the ordinance. The Board's motion addresses both of these claims and the court will deal with them separately.

I

The Board's motion as it relates to constitutional injury arising from the statute itself presents a very simple issue for consideration. The Board argues that if a local ordinance passes the required level of constitutional scrutiny, in this case rational relation to a legitimate county purpose, then the court's inquiry has ended and the ordinance must be upheld. The court is to make no investigation into the enacting body's motive, and indeed, as the Board's

counsel forthrightly stated at oral argument, the court would have to uphold the ordinance even if there were no dispute that the legislation had been enacted solely for malign or otherwise improper motives. Both the plaintiffs and the Sheriff contend that this cannot be the case. In light of the purely legal nature of this dispute a recitation of the facts is not required. It is sufficient to note at this juncture that the record contains more than adequate evidence of a dispute over the motives behind passage of the ordinance; if the Board is incorrect in its theory, the motion under Rule 56 will have to be denied.

The standard of scrutiny which a court will apply to laws challenged under the Equal Protection clause depends upon the interests affected, the classification involved and the governmental interests asserted in support of the classification. *Dunn v. Blumstein*, 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972). Unless an ordinance infringes upon a fundamental right, or involves an inherently suspect classification, such as one based upon race or religion, then the court must presume constitutionality and the only task before the court is a determination of whether the ordinance is rationally related to a legitimate state purpose. *Friedman v. Rogers*, 440 U.S. 1, 17, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1979). This case is properly analyzed under the "rational relationship" test.[1]

The Equal Protection clause does not forbid a legislative body from making any distinctions, and particularly in the area of taxes upon various trades and occupations wide latitude is to be given legislative classifications. *See Caskey Baking Co. v. Virginia,* 313 U.S. 117, 121, 61 S.Ct. 881, 883, 85 L.Ed. 1223 (1941); *Brown Forman Co. v. Kentucky,* 217 U.S. 563, 573, 30 S.Ct. 578, 580, 54 L.Ed. 883 (1910). The question on this motion, simply put, is whether the Board may make an otherwise proper distinction between businesses for improper motives such as distaste for a particular proprietor, his business, or his clientele.

The court's decision of this issue is controlled by *South Carolina Educ. Ass'n v. Campbell,* 883 F.2d 1251 (4th Cir.1989), *cert. denied,* ── U.S. ──, 110 S.Ct. 1129, 107 L.Ed.2d 1035 (1990). In *Campbell,* the plaintiff alleged, and the district court found, that the state legislature's sole purpose in passing the challenged legislation was antipathy towards the plaintiff and its goals. The court granted judgment to the plaintiff and fashioned appropriate relief. *Id.* at 1257. The court of appeals reversed, holding that when examining the constitutionality of legislation a court may look to the motives of the enacting body in only a few, narrowly circumscribed situations. *Id.* at 1257–1262. The court held that under the facts in *Campbell* such an inquiry was improper. In essence, a court may examine the legislature's motive only in cases where courts have expressly determined motive to be a substantive element of the test of constitutionality. *Id.* at 1259. Such exceptions include race and sex discrimination cases, establishment of religion

---

1. The ordinance at issues is contained in the Greene County Code, Div. 4, § 1–38. It states:
   (a) All persons bringing to and exhibiting for sale to consumers at retail in the county in trucks, in temporary places or fixed places of sale, goods or merchandise of any character as bankrupt, consignee, trustee, railroad wreck, fire, slaughter stock, leftover, exposition stock, or stock of like character, and all itinerant vendors doing business in the county, shall pay for the privilege a license tax of Five Hundred ($500.00) Dollars per year and no license shall be issued under this section for a fraction thereof.
   (b) "Itinerant vendors" as used in this section shall be construed to mean and include all persons, whether principal, agent or salesman, who engage in temporary or transient business in the county or in one or more places, and who for the purpose of carrying on such business, hire, lease or occupy any building, structure, truck or other place for the exhibition or sale of goods or merchandise.
   (c) All subcontract vendors of itinerant vendors shall pay a license fee of $100.00 per year and no license shall be issued for a fraction thereof.
   No serious argument has been made that the ordinance, as enacted, was not within the power of the Board to enact and also rationally related to a legitimate county purpose, namely the raising of revenue for County expenditures.

cases, and cases where a statute on its face directly inhibits, or has the inevitable effect of inhibiting, freedom of speech or other "related" constitutional rights. *Id.*

The present case is clearly not a race or sex discrimination case, nor does it involve any establishment of religion claims. Plaintiffs allege no violation of their First Amendment right to free speech,[2] and the ordinance does not appear to the court, *on its face,* to directly inhibit, or have the inevitable effect of inhibiting, any other related constitutional rights. While the plaintiffs and the Sheriff took different views of precisely what improper motivations underlay passage of the ordinance, any investigation into such motive appears to be foreclosed.[3] Since this court is barred by precedent from examining the motives of the Board, however improper they may have been, summary judgment must be granted to the Board on all claims arising from the statute itself.

## II

The Board also moved for summary judgment on two other grounds. First, the Board argues that the Sheriff and his deputies are independent officers for whose actions the Board may not be liable, and second that insufficient factual support has been alleged to show a conspiracy between the Board and the Sheriff to violate the plaintiffs' rights.

■ It is undisputed that in Virginia County Sheriffs are independent constitutional officers entirely separate and distinct from the county Boards of Supervisors. *See Hilton v. Amburgey,* 198 Va. 727, 729, 96 S.E.2d 151 (1957). Clearly there can be no liability on the Board's part for the actions of the Sheriff under any form of *respondeat superior* liability or supervisory liability. However, the Sheriff's independence, by itself, is an insufficient basis upon which to award summary judgment to the Board, for the Board could so associate itself with the Sheriff and his actions that it, too, could be liable for them. The plaintiffs allege that such a conspiracy occurred.

The Board raises two technical reasons in support of its motion on this Count. The first is that 42 U.S.C. § 1985 applies only to racially or class-based discrimination, and the second is that the Board is not a "person" capable of conspiring under § 1985.

■ Dealing with these issues in reverse order, the Supreme Court held in *Monell v. Dep't of Social Services of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), that municipalities are persons amenable to suit under 42 U.S.C. § 1983. This holding has been extended to other civil rights statutes as well, including § 1985. *Owens v. Haas,* 601 F.2d 1242, 1247 (2nd Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). To the extent that there remains some disagreement among the lower courts after the decision in *Monell* the better reasoned view appears to this court to be that municipalities are liable under § 1985.

■ Taking the plaintiffs' allegations as true, as the court must at this juncture, it appears that violations of the plaintiffs rights under the Fourth Amendment may have occurred during the Sheriff's enforcement of the statute. There also would appear to be sufficient dispute over the facts relating to the existence of a conspiracy that that issue too would survive sum-

---

2. While plaintiffs do allege violations of their First Amendment right to freedom of assembly, this claims arises not from the ordinance itself, but from the manner in which it was enforced.

3. While determination of legislative motive may be a difficult task, see *Edwards v. Aguillard,* 482 U.S. 578, 636–637, 107 S.Ct. 2573, 2605–2606, 96 L.Ed.2d 510 (1987) (Scalia, J., dissenting) for an enumeration of potential problems, complex matters are routinely left to the capabilities of the jury. And while a blanket rule which prevents consideration of legislative motive would seem questionable, particularly where it results in an egregiously discriminatory outcome, *see Holt v. Richmond,* 459 F.2d 1093, 1100–1112 (4th Cir.) (*en banc*), *cert. denied,* 408 U.S. 931, 92 S.Ct. 2510, 33 L.Ed.2d 343 (1972) (Butzner, J., dissenting), it is a rule of substantial duration in American jurisprudence. *See Fletcher v. Peck,* 10 U.S. (6 Cranch) 87, 130, 3 L.Ed. 162 (1810) (court will not examine legislative motive despite allegation that passage of act had been secured through bribery of members of Georgia legislature).

mary judgment. However, it is a prerequisite to suit under § 1985(3) that there be some form of class-based animus which motivates the conspiracy. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). *See also Mahoney v. Nat'l Org. for Women,* 681 F.Supp. 129, 134 (D.Conn.1987) (to be cognizable under § 1985(3) plaintiff's class "must be at least class *qua* class"). A deprivation of rights, or even a conspiracy to deprive rights, is not by itself actionable under § 1985(3) absent some form of class-based motivation. *Id. United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 837, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983), held that § 1985 did not reach discrimination against a class of people based upon their "*economic* views, status, or activities." The plaintiffs' premise in this case is that the defendants discriminated against them because they were flea market operators and vendors. *Scott* holds that this kind of activity, based as it is upon purely economic distinctions, is beyond the scope of the statute. Since the Board could be liable for the actions of the Sheriff only by conspiring with him [4], and since *Scott* holds such conspiracy, even if it existed, not actionable, the motion for summary judgment must be granted.[5]

### III

In conclusion, this court is bound by precedent not to inquire into the motives which may have lead the Board to enact the challenged ordinance. Since the ordinance is rationally related to a legitimate county purpose it does not violate the constitution. The plaintiffs are not members of a class which may bring suit under 42 U.S.C. § 1985(3). Summary judgment shall be granted in favor of the Board.

---

**4.** To be liable under 42 U.S.C. § 1983 there would have to be some evidence that it was the policy of the Board to in some fashion counsel improper action on the part of the Sheriff. *See Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. No such evidence has been presented.

**5.** Since 42 U.S.C. § 1986 is derivative of § 1985, the failure of the plaintiffs' § 1985 claim necessitates the dismissal of their § 1986 claims.