**William F. VAN ECK and Gertrude J. Van Eck, Plaintiffs**

v.

**Jeffrey CIMAHOSKY, et al., Defendants**

**No. 3:03–CV–01232 EBB.**

United States District Court, D. Connecticut.

June 3, 2004.

---

William F. Van Eck, East Haven, CT, pro se.

J. Van Eck, East Haven, CT, pro se.

John B. Hughes, U.S. Attorney's Office, New Haven, CT, for Defendants.

## RULING ON THE DEFENDANT'S MOTION TO DISMISS

BURNS, Senior District Judge.

### INTRODUCTION

Plaintiff William F. Van Eck, M.D. ("Dr. Van Eck"), and Plaintiff Gertrude J. Van Eck, M.D. ("Dr. G. Van Eck"), bring suit against the Defendants for claims arising from the retrieval of certain documents by Jan Van Eck ("Jan"), their son, accompanied by federal employees, from his place of business, apparently a building also housing the Plaintiffs' medical practice.

The Plaintiffs assert numerous claims arising from this retrieval, including violations of the Federal Tort Claims Act ("FTCA"), state law tort claims, violations of the Fourth, Fifth, and Fourteenth Amendments, and liability of the federal employees' superiors under the doctrine of *respondeat superior.*

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues in, and the decision rendered, on this Motion. The facts are culled from the Complaint.

Plaintiffs, Dr. Van Eck and Dr. G. Van Eck, ages ninety and eighty-nine respectively, are doctors practicing at 300 Main Street, East Haven, CT. Complaint at ¶ 7, 8. They are the parents of Jan, the subject of a subpoena enforcement action brought by the Department of Transportation ("DOT") and styled *United States Department of Transportation v. Herman Van Eck, d/b/a Flying Dutchman Motorcoach,* 3:00–MC–24 (D.Conn.2000) (EBB). On July 20, 2000, a *capias* issued by the Court was executed and Jan was taken into custody. On July 21, 2000, Jan agreed to return to his place of business to retrieve documents responsive to the subpoena, escorted by Defendants. The Plaintiffs' claims arise from the retrieval of those documents.

Plaintiffs assert numerous claims relating to the document retrieval, including state law tort claims of trespass, larceny/theft/conversion, reckless endangerment, assault and battery; tort claims under the FTCA, constitutional violations of the Fourth, Fifth, and Fourteenth Amendments under the principles established in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and recovery based on the principles of *respondeat superior.*

The Plaintiffs bring suit against the following Defendants: Jeffrey Cimahosky, Division Administrator for Connecticut, Federal Motor Safety Administration, (DOT); Carla Vagnini, Special Agent and Division Program Specialist for Connecticut, (DOT); Mildt L. Schmidt, International North American Free Trade Agreement Coordinator, (DOT); Norman Y. Mineta, Secretary, (DOT); Thomas R. Gallucci, Deputy U.S. Marshall, (D.Conn.); Christopher Hassen, Legal Assistant, U.S. Attorney's Office, (D.Conn.); and John Ashcroft, Attorney General of the United States.

### LEGAL ANALYSIS

#### I. The Standard of Review: Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) should be granted only if

"it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59, (1984). "The function of a motion to dismiss is merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)).

Pursuant to a Rule 12(b)(6) analysis, the Court takes all well-pleaded allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). *See also, Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (Federal Rules reject approach that pleadings is a game of skill in which one misstep by counsel may be decisive of case). The proper test is whether the complaint, viewed in this manner, states **any** valid ground for relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 (emphasis added).

## II. *The Standard as Applied*

### A. The FTCA

The Plaintiffs in this litigation assert tort law claims pursuant to the FTCA. Complaint at ¶ 4. The FTCA provides for a waiver of sovereign immunity with regard to negligent or wrongful acts committed by federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). It does, however, exclude relief for specified intentional torts. 28 U.S.C. § 2680(h). The Liability Reform Act ("Westfall Act") extended immunity to federal employees acting within the scope of their employment from personal liability for state law claims. The Act also substitutes the United States in the place of the federal employee as the defendant in litigation brought against such officers. 28 U.S.C. Section 2679(b)(1) and 2679(d).

### 1. Jurisdiction under the FTCA

Dr. Van Eck's claims under the FTCA may not proceed, as a matter of law, inasmuch as he failed to file suit in the district court before the mandated filing deadline as required by this Act. See *Flory v. U.S.,* 138 F.3d 157 (5th Cir.1998) (limitation periods for asserting tort claims against United States are jurisdictional). The FTCA states that a Plaintiff must file his or her Complaint with the district court no later than six months after the date of mailing of a notification of denial of his or her claim by the appropriate federal agency, here the Department of Justice (DOJ). 28 U.S.C. § 2401(b). Dr. Van Eck submitted a notice of claim to the DOT on August 15, 2000. The DOT referred this Notice to the DOJ, which denied his claim on June 27, 2001. The DOJ letter advised Dr. Van Eck that, if he was dissatisfied with the DOJ's decision, he could file suit in district court within the next six months. Thus Dr. Van Eck had a mandatory deadline of December 27, 2001 for the filing of the present Complaint.

Dr. Van Eck argues that there was an improper notification to him of the DOJ's ruling and that he should be able to pursue his claims in District Court. The allegedly incorrect notification resulted, however, from Dr. Van Eck's failure to advise the Government that he wished notice to be given to the law office address of his attorney.[1] The Government's actions

---

1. The notice of claim in its last paragraph directed only that any check be made payable to the law office.

were proper in mailing the notification to the sole address it had for Dr. Van Eck, and it is only because of Dr. Van Eck's failure to inform the government of a change in address that notification was delayed.

Dr. Van Eck filed his Complaint on July 17, 2003, nearly nineteen months after the expiration of the deadline. "Unless a basis exists for equitably tolling the FTCA six-month limitations period, plaintiff's tort claim is barred." *Long v. Card*, 882 F.Supp. 1285, 1287 (E.D.N.Y.1995). "Federal courts have typically extended equitable relief only sparingly ... [for example] in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The Plaintiff's allegation of improper notice does not justify tolling the six-month limitations period applicable to the Plaintiff's FTCA claim. Accordingly, Dr. Van Eck's claims under the FTCA are barred as a matter of law, pursuant to 28 U.S.C. Section 2401(b), and are hereby DISMISSED.

■ Dr. G. Van Eck's claims under the FTCA are also dismissed because she failed to make any attempt to exhaust her administrative remedies before pursuing her claims in federal court. An FTCA cause of action may be brought into federal court only if "the claimant shall have first presented the claim to the appropriate federal agency and [her] claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a). Failure to comply with this statute prescribes dismissal of all claims under the FTCA. *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 104 (2d Cir.1981).[2] Inasmuch as Dr. G. Van Eck failed to seek any administrative relief pursuant to 28 U.S.C. Section 2675(a), her alleged claims under the FTCA must be, and hereby are, DISMISSED.

**B. Bivens and the Constitutional Claims**

■ *Bivens* actions seek to hold federal employees personally liable for constitutional violations committed under the color of their authority. A plaintiff must establish both the deprivation of a clearly established constitutional right and that, in depriving the plaintiff of that right, the defendant acted under the color of federal law. *Mahoney v. National Organization of Women*, 681 F.Supp. 129, 132 (D.Conn. 1987). Ordinarily, establishing the first element is a significant obstacle for a plaintiff. Without meeting this element, the entire case may be dismissed under a 12(b)(6) inquiry or, concomitantly, as the basis of a qualified immunity defense.

**1. Fourth Amendment Claim**

■ In this action, the Plaintiffs have overcome the obstacle of the initial ele-

**2.** Dr. G. Van Eck asserts that "Gallucci pushed and shoved ... [her and she] fell backward, crashing into a filing cabinet." Complaint ¶ 22. The FTCA contains an exclusionary section which provides, in relevant part, that relief under the FTCA "shall not apply to [a]ny claim arising out of assault, battery ..." provided the claims do not relate to actions or omissions of investigative law enforcement officers. 28 U.S.C. § 2680(h). Gallucci falls under the rubrik of an investiga-

tive and law enforcement officer as defined by the statute in that he is "an officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal Law." 28 U.S.C. § 2680(h). Hence, the finder of fact could possibly determine that Dr. G. Van Eck had successfully pleaded an assault and battery claim against Gallucci, but such a potential claim is barred by her failure to exhaust administrative remedies.

ment and assert potentially viable Fourth Amendment claims against Defendants Gallucci, Cimahosky, and Vagnini. While the Complaint is often confusing regarding specific allegations of constitutional violations by each Defendant, because it is a *pro se* complaint, it is construed more liberally. The Supreme Court has instructed the District Courts to apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing a pleading submitted by counsel. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Given this flexible standard, it appears that the Complaint provides enough information to meet the necessary requirements for Fourth Amendment claims against Defendants Gallucci, Cimahosky, and Vagnini inasmuch as they are Defendants who acted under color of federal law.

For Fourth Amendment violations to survive a Motion to Dismiss, the Complaint ordinarily must state these claims with some factual specificity regarding the individual involvement of each named defendant. *Johnson v. Newburgh Enlarged School Dist.,* 239 F.3d 246, 254 (2d Cir. 2001). Admittedly, the present Complaint is disjunctive and often vague in its allegations and, were it not a *pro se* Complaint, it might possibly be dismissed for a failure of specificity regarding the Fourth Amendment allegations. But cf Federal Rules of Civil Procedure 8(a). However, when interpreted more liberally, the requisite elements of a Fourth Amendment claim are present. Admittedly, the Complaint does not set forth with precision how each Defendant's acts violated the Fourth Amendment. Rather, it lists specific factual acts of these three individual Defendants in the "Nature of the Case" section of the Complaint. Complaint at ¶ 18–27. It then makes more generalized statements about

how these Defendants violated the Fourth Amendment. Complaint at ¶ 28, 31, 39. However, when the factual allegations against each named Defendant are separated and analyzed with regard to the Fourth Amendment, individual Fourth Amendment claims against the Defendants Gallucci, Cimahosky, and Vagnini are discernable.

The Complaint alleges sufficient information to sustain an allegation of a Fourth Amendment violation by Defendant Gallucci. The Complaint alleges acts by the Defendants, including Gallucci, that "violated the rights of Plaintiffs to be secure in their persons, house, papers and effects against warrantless trespass, search and seizure." Complaint at ¶ 31. The Complaint also lists various acts committed by Gallucci during the search, including that he allegedly "forced open the passage door" [to a room in the medical office]; "rifled records . . . seized and stole several thousand pages of records . . . took possession of the photocopier;" and "took at least one negotiable instrument." Complaint at ¶¶ 21, 23. These specific factual allegations against Gallucci constitute a potentially viable Fourth Amendment claim. A finder of fact could reasonably determine that these acts meet the definition of an unreasonable search and seizure. Therefore, the issue must be decided by a jury and not by the Court as a matter of law.

Likewise, there is a potentially viable Fourth Amendment claim set forth against Defendant Cimahosky. The Complaint avers that Cimahosky "burst into the reception area" [of the medical building]; "instructed Gallucci and John Doe 1 to gain access to the inner sanctum of the medical clinic;" "rifled records . . . [and] seized and stole several thousand pages of records." Complaint at ¶¶ 21, 22, 23. It is therefore a jury question as to whether there was an

unreasonable search and seizure by Cima-hosky.

The analysis as set forth above is identical as to Defendant Vagnini. The Complaint states that Vagnini accompanied Cimahosky into the medical clinic; "rifled records ... [and] seized and stole several thousand pages of records"; and "took at least one negotiable instrument" valued at one thousand dollars. Complaint at ¶¶ 21, 23, 24. Hence it is the jury which must decide whether Defendant Vagnini violated the Fourth Amendment rights of the Plaintiffs.

The Fourth Amendment claim against Hassen has not been pleaded with sufficient specificity to sustain an argument for recovery. The Complaint alludes to Fourth Amendment claims in various paragraphs. Complaint ¶¶ 1, 25, 28–32, 39, 43. However, these claims do not describe in any detail what constitutional violations were allegedly committed by him. The only mention of him in the Complaint that can be regarded as a Fourth Amendment claim is that he accompanied Defendants Cimahosky and Galucci into the Plaintiff's Medical Office. Complaint ¶ 21. This claim alone does not amount to a violation of the Plaintiffs' Fourth Amendment rights. Even with the specific allegation that Hassen was present at the medical clinic during the search, this allegation alone fails to amount to a viable Fourth Amendment claim. Therefore, the Fourth Amendment claim against Hassen is hereby DISMISSED.

### 2. Fifth Amendment Claim

 Under the *Bivens* analysis, claims against Government officials must not be founded upon vague, conclusory, or general allegations. *Ostrowski v. Mehltretter*, 20 Fed.Appx. 87, 89–90, 2001 WL 1220524 *2 (2d Cir.2001). The Complaint alludes to Fifth Amendment violations in various paragraphs. See Complaint ¶¶ 1, 36, 37, 39, 42. However, nowhere in the Complaint are these constitutional claims described in any detail nor are violations of this Amendment attributed to any of the Defendants. The Complaint makes broad statements such as "in seizing the premises ... Defendants ... [were] violative of the safeguards and provisions of the Fifth Amendment" (Complaint ¶ 36) and "in seizing property by strong hand and armed force ... defendants ... [were] violative of the safeguards and provisions of the Fifth Amendment" (Complaint ¶ 37). These allegations are simply too vague and conclusory, even when analyzed under the more liberal standard of a *pro se* Complaint, and therefore the Plaintiffs fail to state a Fifth Amendment claim upon which relief could be granted by any reasonable finder of fact. Resultantly, each and every Fifth Amendment claim is hereby DISMISSED.

### 3. Fourteenth Amendment Claim

The Supreme Court has ruled that where a particular Amendment provides a textual source against a particular sort of Governmental behavior that Amendment [here the Fourth], not the generalized notion of substantive due process, must be the guide for analyzing these claims. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Thus the Plaintiffs' Fourteenth Amendment claim in this case is inappropriate and is hereby DISMISSED.

### C. Respondeat Superior Defendants

 "It is well settled ... that the doctrine of respondeat superior standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *Monell v. Department of Soc. Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d

611 (1978). "Evidence of a supervisory official's 'personal involvement' in the challenged action is required." *Hayut v. State University of New York*, 352 F.3d 733, 753 (2d Cir.2003) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2nd Cir.2001)). In this case the Defendants Schmidt, Ashcroft, and Mineta had no personal involvement in the events at issue. They cannot, therefore, be held accountable under the doctrine of *respondeat superior* and the claims against these three Defendants are hereby DISMISSED.

### D. John Doe Defendants

The Plaintiffs' claims against "John Does 1–10" may not be considered by this Court. The Plaintiffs named as Defendants "John Does 1–10" hoping "to establish their identities during the prosecution of this action." Complaint at ¶ 14,17.

In a *Bivens* case, the Court applies the statute of limitations of the state in which it sits, and will bar substituting a named party for a John Doe party after that time has expired. In *Chin v. Bowen*, 833 F.2d 21, 23–24 (2d Cir.1987) the court found that *Bivens* cases are analogous to Section 1983 cases and that the state statute of limitations for Section 1983 cases applies. The Connecticut statute of limitations states that "no action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen.Stat. § 52–577 (1996). The Second Circuit Court of Appeals has held that this statute of limitations applies to *Bivens* cases and a Plaintiff may not file a Complaint naming "John Does" as Defendants within the three-year statute of limitations and then seek to replace the John Does with named parties after that time has expired. *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir.1993). In the present case,

the Plaintiffs failed to name the John Doe Defendants by July 21, 2003, the expiration of the statute of limitations. Hence, the failure to name the John Does by the applicable deadline bars these claims and they are hereby DISMISSED.

### CONCLUSION

Viewing the Fourth Amendment claims against Defendants Gallucci, Cimahosky, and Vagnini in the light most favorable to the Plaintiffs, such claims must be determined by the finder of fact and not by this Court as a matter of law. All remaining claims, as determined above, are insufficient as a matter of law and shall be, and hereby are, DISMISSED. *See* [Doc. No 4]

SO ORDERED.